## Rowan *vs.* Kelsey and others.

The action of ejectment will lie whenever a right of entry exists, and the interest is of such a character that it can be held and enjoyed, and possession thereof delivered, in execution of a judgment for its recovery.

The true test of the action seems to be, that the thing claimed should be a corporeal hereditament; that a right of entry should exist at the time of the commencement of the action; and that the interest be visible and tangible, so that the sheriff many deliver the possession to the plaintiff in execution of the judgment of the court.

Upon the destruction of buildings of which the demised premises are a part, the lessee's right of entry is gone, and no longer exists, because his interest is not tangible or visible, and the delivery of the possession by the sheriff, upon a writ of *habere facias* would be impossible.

A lease, executed by the defendant to the plaintiff, for the term of ten years, described the demised premises as " all that certain room on the first floor and southwardly end of the building situate on the corner of C. and S. streets, in the 6th ward of the city of Brooklyn, being 80 feet on C. street and 50 feet on S. street, together with the cellar under the same, of the same dimensions, and also the ground in rear of the same, 50 feet on S. street and in length 80 feet." The lessor covenanted to make necessary repairs, during the term, and reserved a right to re-enter at all times, for that purpose. The lessee entered into possession, and kept horses upon the premises. The part of the building leased was one room in the first story, 80 feet in length, and 50 feet in width, and a cellar, containing stalls for horses. The front and rear walls of the building having canted and become dangerous, an order was made by the city court of Brooklyn by which the building was found to be a nuisance and its repairs and removal ordered: accordingly the lessor proceeded to make repairs upon the building. Neither the end walls, nor the roof, were removed, but the front and rear walls were taken down, and rebuilt upon the same line, and the same foundation. The floors remained the same, and the building was of the same size as before, but the interior arrangements were different, and the basement was finished off for kitchens. The ground in the rear was fenced off for yards, and cisterns, &c. were put in the same. In an action of ejectment, brought by the lessee—

*Held*, 1. That the demised premises had not lost their identity, by reason of the alterations and repairs upon the building, but were still capable of being marked out and separated, and that possession thereof could be delivered by the sheriff upon execution.

2. That in respect to the ground in the rear of the building, the lessee took an interest in the land, of which he could not be divested, against his will, by anything done to the building; and that his right to recover to that extent, was clear.

Rowan *v.* Kelsey.

This was an appeal by the plaintiff from a judgment entered against him at the circuit. The action was brought to recover possession of certain premises situated in the sixth ward of Brooklyn, and described as follows : all that certain room on the first floor and southerly end of the building, situate on the corner of Columbia and Sedgwick streets, in the sixth ward of the city of Brooklyn, being eighty feet on Columbia street and fifty feet on Sedgwick street, together with the cellar under the same, of the same dimensions, and also the grounds in the rear of the same, fifty feet on Sedgwick street, and in length eighty feet. The complaint set out an indenture of lease from Charles Kelsey, one of the defendants, to the plaintiff, for ten years from February 1st, 1851, describing the premises as above set forth, at an annual rental of two hundred and seventy-five dollars. The lease contained a covenant for quiet enjoyment, to repair and put the premises in suitable order for a stable sufficient for forty horses, with bins and harness closets. The complaint further allege that the lease was duly executed and delivered to the plaintiff, and that he went into possession and paid his rents as required in said lease ; that afterwards the defendant wrongfully entered upon and took possession of said premises ; and holds by force wrongful possession thereof. The complaint further showed that the plaintiff demanded possession of the premises, and that the defendants refused to deliver possession. The plaintiff alleged that he had been deprived of the use and benefit of said premises, and he prayed judgment that the defendants be removed therefrom and that he be put in possession thereof and have damages for such wrongful withholding, and for such other relief as should be just. An answer was put in by the defendants, and the plaintiff replied thereto. The action was tried at the circuit in Kings county, in February, 1853, before Justice Barculo. The plaintiff proved the execution of the lease, and that he went into possession of the premises, and occupied them some time. The defendants produced in evidence an indictment, found on the 12th of June, 1851, by which the building on the demised premises was found to be insecure and unsafe, and was presented as a public nuisance. This indictment was remitted

to the city court of Brooklyn, for trial; and on the 25th of October, 1851, the defendant Kelsey was tried thereon, and convicted of a nuisance. A fine of $50 was imposed upon him, and he was directed to render the buildings secure, and free from danger of falling, or that in default thereof the same be pulled down &c. Testimony was then given to show that in pursuance of this order and judgment of the court, certain repairs and alterations were made in the buildings upon the demised premises, which, it was claimed, destroyed the identity of the buildings, so that ejectment would not lie. This testimony is sufficiently set forth in the opinion of the court. The judge, at the circuit, ordered the plaintiff to be nonsuited.

*S. Kissam*, for the plaintiff. I. The premises in question were to be used as a stable. Ejectments will lie for a stable. (*Dacre's Cas*. 1. *Lev*. 58.) It will lie for a kitchen. (*Adams on Ejectment, p*. 27.) It will lie for rooms. (*Sullivan* v. *Legraves*, 1 *Str. Cases*, 695.) II. The indictment and conviction of the defendant Kelsey, as to the building, and the order or judgment of the court, did not cancel or destroy the covenants in the lease, as between the lessor, Kelsey, and the plaintiff, the lessee, neither as to the right of possession, nor as to the covenants to rebuild and repair. III. The lessee, the plaintiff, was not a party to the proceedings as to the nuisance, and on that account is not bound thereby. The court had not the power to abrogate the lease; nor did the judgment made in this matter have any such effect. To do so, would be to impair the obligation of a contract, and would be unconstitutional and void. IV. If the court had such power in this case, the order had no such effect, for the court ordered Kelsey to pull down, and he obeyed the order and rebuilt, as he had covenanted with the plaintiff. It was never prostrated by the sheriff, as it might have been, had he still neglected to obey the alternate order of the court. V. The premises were not destroyed, nor their identity lost. VI. The moment the defendant Kelsey had rebuilt or repaired the building, the plaintiff was entitled to possession of it. The evidence shows the plaintiff demanded the keys and possession

Rowan *v.* Kelsey.

of the premises, but the defendant Kelsey refused to deliver, and that he put the plaintiff's goods out of the building. The defendants were from that time trespassers. (*Wilber* v. *Paine*, 1 *Ohio Rep.* 252.) VII. The sheriff could deliver possession of the premises in question; and therefore ejectment for the possession' would lie. (9 *John.* 293. 16 *Id.* 184. *Adams on Ejectment*, *p.* 27.) VIII. The court erred in nonsuiting the plaintiff, and the judgment should be reversed and a new trial ordered. Ejectment will lie for the premises in question. The description was sufficiently definite. The lease carried the room, fifty by eighty feet, and the ground under it, which was a cellar, made for a stable; also the ground, fifty by eighty feet, in the rear. IX. The plaintiff's right of entry was perfect; and whenever that is so, ejectment will lie therefor, and therefore judgment should have been for the plaintiff. (2 *R. S.* 3*d ed.* *p.* 306, § 18.) An ejectment lies by a lessee for years for recovery of his term, and damages if he be ousted by his lessor or by a stranger. (*Com. Digest, tit. Eject. vol.* 3, *p.* 609.)

*J. W. Gilbert*, for the defendants. I. The nonsuit was properly granted, because the *locus in quo* was not in existence when the suit was commenced. II. The lease passed no interest in land, but was a demise of apartments merely. And with the destruction of the demised premises, under the circumstances in evidence, the lease itself, and all rights and interest under it, terminated. (3 *Edw. Ch. R.* 315. *Kerr* v. *Merchants' Exch. Co., and cases cited.*) III. The plaintiff acquiesced in the changes made when the new building was erected, and is therefore estopped from claiming under the lease.

*By the Court,* BROWN, P. J. Under the lease set out in the complaint, the plaintiff had a right of entry upon the demised premises and to hold and enjoy the same for the residue of the term granted, unless the premises had been so changed and altered, under the judgment and order of the city court of Brooklyn, that they could no longer be identified, and possession thereof could not be delivered by the sheriff.

The action of ejectment will lie whenever a right of entry exists, and the interest is of such a character that it can be held and enjoyed, and possession thereof delivered in execution of a judgment for its recovery. Ejectment is only maintainable for corporeal hereditaments. "A writ of ejectment is not an adequate means to try the title of all estates; for on those things whereon an entry cannot in fact be made, no entry shall be supposed, by any fiction of the parties. Therefore an ejectment will not lie of an advowson, a rent, a common, or other incorporeal hereditament, except for tithes in the hands of lay appropriators, by the express purview of statute 32 Henry 8, chap. 7." (3 *Black. Com.* 206.) "A writ of *ejectione firmœ*, or action of trespass and ejectment, was the appropriate form of action when the lessor, reversioner, remainderman or any stranger doth eject or oust the lessee of his term." (*Id.* 199.) Things that lie merely in grant are not the subjects of an action of ejectment, "because these being incorporeal things are in their nature invisible *quœ nequo tangi nec videri possunt;* and therefore not capable of being delivered in execution." (*Bac. Abr. Ejectment, D.*) "An ejectment lies of a stable, because it is a word of determinate signification, and may be delivered by a writ of execution." "An ejectment of a house is good, though in a precipe it ought to be demanded by the name of a messuage. So ejectment of a chamber in the second story of such a house was held good, there being certainty enough to direct the sheriff in the execution." (*Bacon's Abr. Ejectment, D. See also Jackson* v. *Buel,* 9 *John.* 298; *Jackson* v. *May,* 16 *Id.* 184.) The true test, therefore, of this action seems to be, that the thing claimed should be a corporeal hereditament, that a right of entry should exist at the time of the commencement of the action, and that the interest be visible and tangible, so that the sheriff may deliver the possession to the plaintiff in execution of the judgment of the court.

The nonsuit granted at the trial proceeded upon the ground that the lease from Charles Kelsey to William L. Rowan, the plaintiff, of the date of the 20th Feb. 1851, passed no interest in the land. It also assumed the destruction of the demised

premises under the judgment of the city court, upon the indict-
ment against the defendant Kelsey for the nuisance, and then
adopted, as a conclusion of law, that all right of entry under the
lease had ceased to exist.   In populous cities, different persons
have different freeholds in the same building, over the same
piece of ground.   And where the different rooms in the several
successive stories of the same tenement or building are owned
by different persons, the courts may, in the construction of the
title deeds to such property, be required to determine whether
the demise or conveyance of a particular room or rooms carries
with it any interest in the land upon which the building is erect-
ed.   It is manifest that the common law signification of land,
which embraces all above as well as all below, to an indefinite
extent, cannot be applied to such interests.   The instruments
assuring the titles to such property must be construed with ref-
erence to the subject matter, and the estates which they are
designed to convey.   Thus, *Doe* v. *Burt,* (1 *Term R.* 701,)
was an action of ejectment to recover the possession of a cellar
and wine vaults in Westminster, under a lease which described
the demised premises as " one room on the ground floor and a
cellar thereunder, and a vault contiguous and adjoining thereto,
and three rooms, together with the ground whereon the same
now stands, and together with a piece of ground on the north
side : the whole to have been late in the possession of A." The
wine vault claimed was under the piece of ground which was
the yard, and was, at the time of the execution of the lease, in
the possession of B., another tenant.   The defendant claimed
that title to the premises for the term mentioned passed to him
under the lease, upon the principle that *cujus est solum ejus
est usque ad cœlum et ad infernos.*   The court held that *prima
facie* the property in the vault would pass by the demise, but it
might be regulated and explained by the circumstances.   It was
proper to receive the evidence offered at the trial to show the
intention of the parties ; and when received, that showed the
vault was not to pass by the demise.   The case of *Winton* v.
*Cornish,* (5 *Ohio R.* 303,) was the demise of a cellar and a
room over it in the corner of a building several stories high,

afterwards destroyed by fire.   And the case of *Kerr* v. *The Merchants' Exchange Co.* (3 *Edw. Ch. R.* 315,) was a bill filed for relief in respect to a demise of rooms No. 10 and 11 in the building known as the Merchants' Exchange, also destroyed by fire.   In both it was held that the leases passed no interest in the land upon which the buildings were erected.   It follows, as a necessary consequence, from the rules already referred to in regard to the action of ejectment, that upon the destruction of buildings of which the demised premises are a part, the right of entry is gone and no longer exists, because the interest of the lessee is not tangible or visible, and the delivery of the possession by the sheriff, upon a writ of *habere facias*, would be impossible.   In *Winton* v. *Cornish* the lessee, after the destruction of the building, entered and erected a small structure upon the site of the cellar and room, and of a height corresponding with the height of the room demised.   The court decided that the lessee took no interest in the land, and that when the building was destroyed the lessee's interest was destroyed with it.   In *Kerr* v. *The Merchants' Exchange Co.*, the bill claimed no specific relief, but the counsel for the complainants insisted, upon the argument, that if they could not have the possession, they were entitled to damages, upon a *quantum damnificatus.*   The vice chancellor decided that the lease must be construed as passing no interest in the land, and by the destruction of the demised premises, the lease itself, and all rights and interest under it, terminated.   There would seem, therefore, to be no uncertainty in regard to the rule of law which is to prevail in the present action.   And it remains to be seen whether the lessee took an interest in the lands, under the demise, and whether the evidence showed the destruction of the demised premises to be so complete that they lost their identity and ceased to exist.

The lease is for the term of ten years, and describes the demised premises as " all that certain room on the first floor and southwardly end of the building situate on the corner of Columbia and Sedgwick streets, in the 6th ward of the city of Brooklyn, being 80 feet on Columbia street and 50 feet on Sedgwick

Rowan *v.* Kelsey.

street, together with the cellar under the same, of the same di-
mensions, and also the ground in rear of the same, 50 feet on
Sedgwick street and in length 80 feet." It is well to notice that
the lease contains a covenant that the lessor shall put up in the
cellar stables for 40 horses, with necessary and sufficient bins,
and harness closets, with certain other improvements, and make
necessary repairs during the term. And in case the building
should be destroyed by the elements, or be so far damaged
as to become untenable, that he would rebuild and repair the
same in a reasonable time, with a reservation of a right to the
lessor to re-enter, at all times, for the purpose of making such
repairs. The proof showed that the plaintiff entered into the
possession, and kept horses upon the premises, where he re-
mained some length of time. The part of the building leased
to the plaintiff was one room in the first story, 80 feet in length
and 50 feet in width, and the cellar, which had no floor, but stalls
for horses were put into it. It also appeared from the testimony
that the front and rear walls of the building (to use the expres-
sion of the witness) were canted some, and had become dangerous.
After the order and judgment of the city court of Brooklyn, by
which the building was found to be a nuisance, and its repair and
removal ordered, the defendant proceeded to make repairs upon
the building. Neither the end walls nor the roof were removed,
but remained the same at the time of the commencement of the
action. The front and the rear walls were taken down and re-
built upon the same line and the same foundation. These were
the only alterations in the walls. There was no floor in the cel-
lar or stables. The floors to the building were the same after as
before the repairs were made, and the room on the first floor was
originally divided by posts to support the floors above. After
the alterations and improvements, the building remained of the
same size as before. When the repairs were completed, the first
story was divided into stores 20 feet wide, with stairways be-
tween, and dwellings in the second and third stories. There are
brick party walls between the stores; the basements are finished
off for kitchens, to be used with the dwellings. And the ground
in the rear was fenced off for yards for the stores and dwellings,

and cisterns and privies were put in. It also appeared from the evidence that the defendant took the keys for the purpose of making repairs, and has hitherto refused to restore them, or to permit the plaintiff to resume the possession. The following conclusions result, I think, from an examination of the evidence. 1. The building, of which a part of the demised premises is parcel, has not been destroyed; for the floors, roof and two of the walls remain in all respects the same, and the two walls removed are replaced by two others standing on the same line, and on the same identical foundation. The changes effected did not result from fire, tempest, or other accident, nor were they made in execution of the judgment of a criminal court of competent jurisdiction, but proceeded from the act of the defendant himself. 2. The room on the first floor and southerly end of the building, 80 feet long and 50 feet wide, with the cellar or basement underneath the same, are visible and tangible, notwithstanding they are incumbered and separated by the partition walls of the stores and the kitchens. 3. The demised premises have not lost their identity, but are still as capable of being marked out and separated as they were at the time of the execution of the lease, and possession thereof may now be delivered by the sheriff in execution of the judgment of the court. Two of the authorities quoted were cases where the lessees took no interest in the land, followed by a complete destruction of the demised premises by fire, without the act or agency of the lessors. Here the premises demised remain substantially the same, and whatever change has occurred, has been produced by the action of the lessor himself. Under his covenant he was bound to remove the dangerous character of the front and rear walls and repair or replace them by others. Having entered and removed them accordingly, what he did in respect to them must be regarded as done in execution and performance of the covenants of the lease. It is quite apparent that the decayed and defective walls might have been repaired or replaced without inconvenience or injury to the lessee. And the court will not, under such circumstances, deny the prayer of the lessee to be restored to the possession of

the subject demised, unless it appear that its destruction is complete, and possession and enjoyment no longer possible.

The ground in rear of the building, 50 feet on Sedgwick street and in length 80 feet, was by the express terms of the lease also demised to the plaintiff. This, as I understand, was a piece of open ground 50 feet in front upon a public street. It was not necessarily connected with the residue of the demised premises, but was capable of a separate use and enjoyment. In respect to this lot, the lessee took an interest in the land, of which he could not be divested against his will by any thing done to the building, of which the residue of the demised premises were a part. The plaintiff's right to recover, to this extent, seems hardly open to doubt or dispute.

How far the plaintiff may have acquiesced in the extensive and radical change wrought upon the building, and thus be estopped from controverting the defendants' right to withhold the possession, is not now the question. He was nonsuited upon the ground that under his lease he took no interest in the land, and that the demised premises have been so far changed that their identity was lost. The nonsuit must therefore be set aside, and a new trial granted, with costs to abide the event.

[KINGS GENERAL TERM, October 3, 1854. *Brown, Dean* and *Rockwell,* Justices.]