WILLIAM L. ROWAN, Respondent,

*v.*

CHARLES KELSEY and others, Appellants.

Where defendant had leased to plaintiff certain premises, consisting of a large room and the cellar under the house, for the term of ten years, &c., which building was indicted, during the life of the lease, as a nuisance, and by the order of the court, the defendant entered upon the premises and caused the building to be taken down, and then caused other buildings of entirely a different character to be built in its stead: *Held*, that the plaintiff might maintain ejectment for the recovery of the premises, if not estopped by his acts showing that his rights in the premises had terminated.

### Appeal from the Supreme Court.

HUNT, J. This is an appeal by the defendants from a judgment of the Supreme Court, rendered in the second district, in favor of the plaintiff.

The action was substantially in ejectment to recover the possession of certain premises in Brooklyn, and for damages for withholding the same; and the complaint alleges that on the 20th of February, 1851, the defendant Kelsey leased to the plaintiff for the term of ten years, at the

yearly rent of $275, premises described as follows: "All that certain room on the first floor and to the easterly end of the building, situated on the corner of Columbia and Sedgwick streets in the sixth ward of the city of Brooklyn, being eighty feet on Columbia street and fifty on Sedgwick street, together with the cellar under the house, of the same dimensions, and also the ground in the rear of the same, thirty feet on Sedgwick street, and in length eighty feet."

There was in the lease a covenant on the part of Kelsey to put up in the cellar stalls for forty horses, also bins and harness closets, and a cistern, also to make necessary repairs, and in case the building should be destroyed by the elements, or be so far damaged as to be untenantable, then to rebuild or repair, the rent to cease until rebuilt or repaired.

It is alleged that the plaintiff entered under the lease and remained in the possession of the premises until the 1st of March, 1852, when the defendants wrongfully entered, and he demands possession and damages.

The answer substantially denies the complaint, and avers that prior to March 1st, 1852, the interest of the plaintiff in the premises ceased.

The case has been three times tried. On the first trial the plaintiff was nonsuited, and afterward had a new trial. 18 Barb., 484. On the second trial the plaintiff succeeded, but for error in the charge of the judge, a new trial was granted.

The third trial came on before Mr. Justice LOTT and a jury at the Kings Circuit in April, 1860, and the plaintiff had the verdict.

The leading features of the case disclosed on the trial, had under review, are the following:

The lease by Kelsey to the plaintiff was executed at its date, 20th February, 1851, demising the premises for ten years. The part of the building leased was one room in the first story, 80 feet in length, and 50 feet wide, and a

cellar or basement containing stalls for horses, and it was leased to be used as a stable.

On the 22d of June, 1851, the grand jury of Kings county indicted the building as unsafe and a public nuisance. The indictment was tried in October, 1851, and Kelsey was convicted of a nuisance, and by an order of the court, made on the 3d of November, he was ordered to cause the building to be pulled down. Accordingly, in obedience to the order of the court, he went into the possession of the premises, to pull down the building. He took down the front and rear walls, and took up the timber foundations. He also took down the wooden partition at the north end of the part leased to the plaintiff, and took away all the posts that supported the floors. He also cut through the floors of three stories, and then rebuilt the premises in four tenements, each containing a store, dwelling house, back yard, and each separated from the others by a brick partition wall, carried up from the basement, and by reason of this radical change in the structure, it is claimed that all identity of the building and all fitness for use as a stable was destroyed.

There were numerous questions made as to evidence, and refusals to charge, which will be hereafter noticed. At the conclusion of the trial, the court directed a verdict for the plaintiff, which was affirmed by the judgment of the General Term of the Supreme Court, and from the judgment entered thereon this appeal is taken.

The case was decided by the court below, upon the ground that the question had been already definitely passed upon, when the same case was before the court upon a former occasion, and that the court saw no reason to change its former judgment. The opinion given by that court on the former hearing is reported in 18 Barb., 484, where the court says, " the plaintiff had a right of entry upon the demised premises, and to hold and enjoy the same for the residue of his term granted, unless the premises had been so changed and altered under the judg-

ment of the City Court of Brooklyn, that they could no longer be identified, and possession thereof could not be delivered by the sheriff." "The true test of this action," says the learned judge, "seems to be, that the thing should be a corporeal hereditament, that a right of entry should exist at the time of the commencement of the action, and that the interest be visible and tangible, so that the sheriff may deliver the possession to the plaintiff, in execution of the judgment of this court. * * And it remains to be seen whether the lessee took an interest in the lands under the demise, and whether the evidence showed the destruction of the demised premises to be so complete that they lost their identity and ceased to exist."

That the demise of the rooms and the cellar created no interest in the land upon which they stood, or of which they formed a part, is not open to serious question. It was expressly so held in *Kerr* v. *The Merchants' Exchange Co.*, 3 Ed. Ch. R., 315, where the demise was of the rooms Nos. 10 and 11, in the building known as the Merchants' Exchange, which was afterward destroyed by fire. It was held that no interest passed in the land upon which the building stood. In *Ariston* v. *Corneish*, 5 Ohio, 303, the demise was of a cellar and a room over it, in the corner of a building several stories high. After its destruction, by fire, the lessee entered and erected a small structure upon the site of the cellar and room, and of a height corresponding with the height of the room demised. It was held that he took no interest in the land, and had no rights whatever after the destruction of the building by fire. A similar case was that of *Doe* v. *Burt*, 1 Term, 701.

A more difficult question arises upon the point of the remaining identity of the demised premises. Rowan hired a basement filled up with stalls, bins and harness rooms, sufficient to accommodate forty horses, and to be used as a livery stable. He hired also a room of fifty by

eighty feet in size, and a piece of land in the rear of it of the same dimensions. The room and lot were to be used as a riding school, and apparently for the purposes also connected with the livery stable. It is undeniable that the character of the premises has been so changed that they cannot be used in the manner or for the purposes originally intended. There is now no room of fifty by eighty feet in size, in which horses, harness, grains and carriages may be kept. What was that room is now arranged for the basement and kitchens of several dwelling houses, with the ordinary conveniences, and divided into several parts, separated by substantial brick walls. What was before the large room above it, is now divided into four stores, also separated from each other by the like substantial walls. The lessee certainly would not be obliged to accept such premises as the identical premises leased from Kelsey. He could well say that for the purposes originally intended, as well as in form, character and value, the identity of the premises was entirely destroyed. It is true that the several parts of the building had not been entirely taken out of existence, inasmuch as two of the walls, a portion of the roof, and a portion of the foundation were used in the new structure. It is equally true, however, that its character and form had been destroyed, that the front and the rear walls were new, that what was before one large stable and riding school, was now four separate and independent stores and dwelling houses, for practical purposes as much disconnected as if they were on different streets. The old materials remained in part, but in a new form and character. How could the sheriff put the lessee in possession of the demised premises, in execution of the judgment of the court? He could find no such rooms as would be described in the *judgment;* he could find no livery stable or riding school. He could do it in no other way than by marking off upon the ground the original dimensions, and carrying the lines upward to the second story. This, however,

forces the recovery of possession upon an interest in the land, which I think the lessee does not possess, and entirely ignores the rooms themselves.

Does it alter the legal result, that the identity of the premises is destroyed intentionally, by the hand of man, and not by fire, by tempest, or by earthquake? The question is one of identity, and not how the non-identity was produced. The lessor might well be liable in damages in the one case and not in the other, but the loss of identity would be equal in either case. It may be assumed, however, in this case, that the change in the building was made by the lessor, in execution of the judgment of the City Court of Brooklyn, for the purpose of destruction as a nuisance, and not for the purpose of repair. It may be assumed, further, that the destruction was with the assent of the lessee, Rowan. Assuming these facts, I am of the opinion that there was not only a destruction of the identity of the premises, but it was such an one as ended the rights of the lessee in the premises, and as prevented his right of recovery in the present action.

The judgment of the City Court, that this building as occupied by Rowan, was a nuisance from its unsafe and dangerous character, was put in evidence without objection, as well as the order of the court directing its removal. It was proved that the rebuilding was made expressly in pursuance of the requirements of judgment. It was also offered to be proved that Rowan told the workmen engaged upon the building that he had caused it to be torn down, that he considered his lease as at an end, and that the lessor was under no obligation to rebuild, and desired the conversation to be reported to the lessor; that it was so reported and acted upon by him, and the building was then divided into stores and dwellings, which had not been before intended. This evidence was rejected, and the plaintiff excepted. If the presence of this evidence would have aided the defendant's case, he is entitled to a new trial on account of its conclusion, and

my assumption of the facts above stated is, therefore, justified in forming a conclusion upon the case.

I am of the opinion, also, that there was equitable estoppel upon the lessee upon the facts proved and offered to be proved, which would prevent his recovery. It was proved or offered to be proved that the lessee was the chief instrument in instituting the proceedings and conducting the trial, which resulted in the judicial condemnation of the building; that he did this from feelings of hostility to the lessor; proof was offered that while the workmen were engaged upon the work, he reported to him that he had caused its destruction; that he considered his lease as at an end; that the lessor was under no obligation to rebuild, and desired this statement to be reported to the lessee; that the lessor, therefore, altered his plan, and made the building into houses and stores. It was also proved that the lessee was several times about the building while the work was going on, understood its nature and character, and made no objections to the alterations. This evidence was offered with the avowed purpose of proving the acquiescence of the lessee in the conduct and acts of the lessor, and in my opinion was competent for the purpose intended. It is not a sufficient answer to its exclusion, that the defense proposed to be established was not pleaded. I think it was fairly within the allegation of the answer denying that portion of the complaint which alleged that the defendant entered upon the premises without the consent of the plaintiff, and held the same by force, and with a strong hand, and within the further allegations of the answer that the plaintiff's interest in the premises had ceased and determined, and that the defendant was entitled to the possession of the same; this evidence tended to prove the assertion.

But no such objection was taken on the trial, nor was the exclusion there placed upon the form of the pleadings. If that ground had been stated, an amendment to the pleadings would have obviated the alleged objection, and

we are not now at liberty to deprive the party of the benefit to which he was then entitled. The evidence would have justified the jury in finding that the plaintiff had abandoned the premises; that he had given express authority to the lessor to rebuild the premises after his own judgment; that he looked on at the expenditure of large sums of money destroying his former right and possession, without dissent. A surrender of his rights, or an estoppel against insisting upon them, would not be deemed unreasonable upon such a state of facts. *Dezell* v. *Odell*, 3 Hill, 215; *Plumb* v. *Col. M. Ins. Co.*, 18 N. Y., 392; 6 Ad. & E., 475; *Lawrence* v. *Brown*, 1 Seld., 394; *Miller* v. *Watson*, 4 Wend., 267; *Tilton* v. *Nelson*, 27 Barb., 395.

Whether the plaintiff could have recovered the rear lot unoccupied by the building, or whether that is to be considered as an incident or adjunct to the building, it is not necessary to decide. The court ordered a recovery of the whole premises, in which they were in error, in my view of the case, as to the rooms and the cellar. A new trial must therefore be ordered.

The judgment of nonsuit should be set aside, and a new trial ordered. Five judges were of the opinion that ejectment might be maintained if plaintiff is not estopped, etc.

Judgment reversed.