## SUPREME COURT.

## THE MAYOR, &c., OF THE CITY OF NEW YORK agt. THE UNION FERRY COMPANY.

*Officers of municipal corporation — their duties — action in equity to set aside conveyances — remedy at law — cloud upon title — Ferry franchise — action by municipal corporation for — relief against acts of municipal officers — Pleading.*

Persons appointed by statute to hold official relations to a municipal corporation and charged with specific trusts and duties in respect to its property and its application, must act in conformity with the law which appoints them. When they act otherwise it is a breach of trust and abandonment of duty.

*Hence, held,* that a lease of ferries for a term of years, made by the commissioners of the sinking fund of the city of New York, at a *nominal rent of one dollar* per annum, the annual rent of which was of the value of more than $100,000, was void; the rents being pledged by law to the sinking fund for the payment of interest on the funded city debt, it was the duty of the commissioners to obtain the rental value of the ferries.

An application to a court of equity for the cancellation of a deed is not a matter of right. It rests with the sound discretion of the court, according to what is reasonable under the circumstances of the particular case, whether the relief shall be granted or refused. The jurisdiction of the court is protective, preventive and remedial.

Where the law affords an adequate remedy equity will not interfere. But where adequate remedial justice is not complete at law, or is in doubt, equity will interfere and grant relief (*Vide, Mayor, &c., of N. Y.* agt. *North Shore Staten Island Ferry Co, post p.* 154). Ejectment will not lie for the recovery of a ferry franchise.

Where, in an action to set aside a deed as invalid, the relief depends upon facts extrinsic thereto such facts must be set up in the complaint.

An action in equity will lie to set aside a lease of *ferries,* illegally made, as a *cloud upon the title* (*Smith* agt. *The Mayor of N. Y.,* 68 *N. Y.,* 552; *Town of Venice* agt. *Woodruff,* 62 *id.,* 470; *N. Y. and N. H. R. R. Co.* agt. *Schuyler,* 17 *id.,* 592).

The *municipal corporation* stands in such relation to the ferry franchises

that it may properly ask a court of equity to examine into the validity of conveyances thereof made by its officers and seek to have deeds which convey away such property to the injury of tax-payers and creditors, and which are void or voidable, canceled and delivered up so that the property may be applied to the purposes to which it has by law been pledged.

*Special Term, New York, June,* 1877.

MOTION at the trial to dismiss the plaintiff's complaint.

*George Ticknor Curtis,* for plaintiff.

*Charles E. Miller* and *Benjamin D. Silliman,* for defendants.

VAN VORST, *J.* — After a careful consideration of the complaint and the argument of the learned counsel for the defendant in support of their motion to dismiss the same, I am of the opinion that the motion ought not to be granted.

The action is brought for the purpose of obtaining an adjudication that a lease from the plaintiff " by the commissioners of the sinking fund " to the defendant, made May 1, 1871, by which certain ferries and their appurtenances were leased to the defendant for a period of ten years at the nominal rent of one dollar per annum, upon the condition of a concession in the way of fares to persons using the ferries during certain hours of the day, should be canceled and the ferries and their appurtenances delivered up.

It appears from the complaint that the plaintiff is the owner of the ferries; that at the time of the making of the lease the rents of the same were pledged to the " sinking fund " to be applied to the payment of the principal and interest of the city stocks for the benefit and relief of the inhabitants and tax-payers of the city of New York; that the defendants, from May 1, 1861, to May 1, 1871, held a lease from the plaintiff of these ferries, paying therefor an aggregate rent of $103,000 per annum, which rent was paid and received for the use of the commissioners of the sinking fund.

That at the time the lease complained of was made the ferries and appurtenances were worth for a term of ten years from May 1, 1871, and ought to have produced to the city, a rent of $150,000 per annum for the use of the commissioners of the sinking fund.

That by force of ordinances of the city, confirmed and ratified by laws of the state, it was the duty of the commissioners of the sinking fund, officers appointed and designated by law, to collect, receive and apply the rents of the ferries to the payment of the interest accruing and to accrue on numerous funded debts and stocks of the city of New York outstanding and held by numerous persons, creditors of the city.

It cannot be otherwise than that the commissioners of the sinking fund were under a duty to the city of New York, its inhabitants and its creditors, to obtain the rental value of the premises.

It cannot be claimed, in reason, that they could give away a valuable franchise which had in the past yielded as rent over $100,000 per annum, and which was in fact worth over $150,000 per annum at the time of making of the lease.

If they could make such gratuitous disposition of the ferry franchise there is no reason why they might not do the same with respect to other property of the city. If they could make this lease at a nominal rent upon a condition that persons using the ferries during certain hours of the day should be favored in the way of fares I do not see but that they could lease valuable lands and buildings owned by the city at a dollar a year upon the condition that their lessees should let the same to under-tenants at low rents.

It is manifest that the commissioners of the sinking fund stood in no such relation to these ferries as to be justified in disposing of them at a nominal rent, in order that they might secure advantages to persons using the same during certain periods. They were under no duty and had no power to sacrifice the interests of the inhabitants of New York and its

creditors to secure advantages and concessions of this nature to limited numbers of persons traveling over the ferries.

Persons appointed or designated by statute to hold official relations to a municipal corporation and charged with specific trusts and duties in respect to its property and its appropriation, must act in conformity with the law which appoints or designates them.

They can legally perform no duty other than that enjoined or reasonably implied from the terms of the statute appointing them.

The corporation is bound only by the authorized acts of its officers and agents (*Brown* agt. *The Mayor, &c.*, 63 *N. Y.*, 243; *Weismer* agt. *Village of Douglas*, 64 *id.*, 105). When they act otherwise it is a breach of trust and abandonment of duty, and the action itself is a violation of public policy.

It cannot but be considered that the disposition of these ferries at a nominal rent, upon the conditions imposed and above referred to, are an unlawful withdrawal of the revenues which belong to, and should be collected for the use of, the sinking fund created for the discharge of the city debt.

But it is urged by the learned counsel for the defendant that the invalidity complained of appears upon the face of the lease and that a court of equity will not order an instrument to be delivered up and canceled which, upon its face, is plainly illegal and void and against public policy. In the lease itself there is no invalidity appearing.

The rent reserved, it is true, is stated to be one dollar per annum. This the lease shows, but it is not necessarily void for that reason. The reservation of a rent of one dollar per annum may, in the law, be a good consideration. *Non constat* it is not all the franchise is worth and sufficient to uphold the instrument.

It is only when the extrinsic fact is stated and proved that the premises were worth $150,000 per annum that the invalidity of the transaction appears.

By such extrinsic fact, for the purposes of this motion,

admitted, the injury to the sinking fund appears, and the lease is shown to have originated in a breach of duty, and to be opposed to public policy.

An application to a court of equity for the cancellation or delivering up of instruments is not, strictly speaking, a matter of absolute right. It is a matter of sound discretion to be exercised by the court, either in granting or refusing the relief prayed, according to its notion of what is reasonable and proper under all the circumstances of the particular case (*Story's Eq. Jur.*, vol. 2, sec. 693).

This is not an arbitrary discretion, however; but is to be judicially exercised (*Hamilton* agt. *Cummings*, 1 *Johns. Chy.*, 517).

The exercise of jurisdiction in cases of this character is protective and preventive. It is also, in a true sense, remedial.

The rule, doubtless, is that where the law affords an adequate remedy for redress, equity will not interfere and decree the cancellation of an instrument.

But where remedial justice, adequate for the protection of the party, is not complete at law or is in doubt, the interposition of a court of equity may be invoked.

I cannot find that the plaintiff has any adequate remedy at law.

An action of ejectment cannot be maintained.

No action of ejectment can be brought for the recovery of a ferry franchise which ranks as an incorporeal hereditament. Ejectment can be brought only for corporeal hereditaments (*Rowan* agt. *Kelsey*, 18 *Barb.*, 488).

Things which lie merely in grant are not the subjects of an action of ejectment, because these being incorporeal things, are in their nature invisible, and therefore not capable of being delivered in execution (*Bacon's Abt., Ejectment, D*).

The right to review the proceeding by *certiorari*, were it otherwise effective, is gone. In analogy to the limitation of a writ of error, the writ of *certiorari* will not be granted after two years (*Ex parte Elmendorf and others* agt. *The Mayor*

The Mayor agt. Union Ferry Company.

*of New York*, 25 *Wend.*, 693 ; *The People* agt. *The Mayor*, *&c., of New York*, 2 *Hill*, 10).

I am, therefore, persuaded that the plaintiff's only remedy is through this action brought for a cancellation of the lease.

It is objected by the counsel for the defendant that there is no allegation in the complaint that the claim of the defendant is valid upon the face of the lease ; that there is no averment that extrinsic facts are necessary to be proved in order to establish its invalidity or illegality ; that it is not alleged that the lease is apparently within the powers of the corporation or of the commissioners of the sinking fund, and in support of their view as to the necessity of such allegation they refer to the case of *Heywood* agt. *The City of Brooklyn* (14 *N. Y.*, 634).

It cannot be that any particular words must be used in setting up a cause of action for equitable relief in cases of this character.

Facts are to be pleaded and not conclusions, and relief must be awarded such as the facts justify.

The power of the commissioners is shown by the complaint, and the lease which is annexed is valid in form and execution. Certain collateral facts are stated in the complaint which do not appear upon the face of the lease. It is true that the pleader does not call them extrinsic facts, nor does he state the necessity of proving them. But the simple statement of the facts invests them with their true character and relation to the lease.

The defendant's counsel further contends, in alluding to the plaintiff's claim in the complaint, that the lease is a " cloud upon the plaintiff's title to the ferries ; that no cloud can be cast upon the title to an incorporeal hereditament or franchise, and that the jurisdiction of a court of equity for the removal of clouds upon title applies only to deeds, instruments and proceedings which affect real estate."

I am referred to the case of *Smith* agt. *The Mayor, &c., of New York*, in the court of appeals, decided in February,

1877, a copy of which in manuscript has been handed up in support of this position (*Smith* agt. *The Mayor*, &c., 68 *N. Y.*, 552).

I do not understand it to be absolutely held in that case that an action in equity cannot be maintained to remove a cloud upon the title of property other than real estate. EARL, J., does say that the attention of the court has not been called to any case where an action has been maintained to remove a cloud upon any title except real estate. He, however, adds: "But there may be some property or rights not real estate over which a cloud may be cast, which a court of equity will remove."

The ferry franchise existing in the municipal corporation plaintiff, is both a property and a right within the terms used by EARL, J.

In speaking of the grants to the city of New York of the right to establish ferries, Chancellor KENT, in his notes upon the Montgomerie charter, says : "They are grants of corporate franchises partaking of the nature of private property. They confer on the inhabitants of New York vested and valuable interests arising from the rents and profits of every ferry established or to be established under the charter" (*Davies' Laws of New York*, 214, n. 30, p. 226; *Hoffman's Treatise on the Estate and Rights of the City of New York*, 1862, pp. 273–303; *Mayor, &c., of New York* agt. *N. Y. and S. I. Ferry Company*, 40 *Superior Ct. R.* [*J. & S.*], 232; opinion, MONELL, *C. J.*).

The case of *The New York and New Haven Railroad Company* agt. *Schuyler* (17 *N. Y.*, 592) was one brought to have certain spurious certificates of stock in a railroad company removed as clouds upon the title of the genuine stockholders. It was upheld upon that ground. In that case it is stated the existence of these shares is unjust "because it must, of necessity, exercise a most depressing influence upon the real stock of the corporation;" and again "we can scarcely err in supposing that,

on the discovery of these frauds, every share of valid stock must at once have lost nearly one-half of its market value; that depression must continue in a greater or less degree, while these certificates are allowed to stand. These shares of stock are a description of property as much entitled to invoke the protective remedies peculiar to the courts of equity as any other."

In *The Town of Venice* agt. *Woodruff* (62 *N. Y.*, 470), RAPALLO, J., in commenting upon the case above mentioned, says: " The spurious shares were held to be a cloud upon the title of the holders of the genuine shares."

In the case under consideration the lease has done more than cast a cloud over the plaintiff's title. It is not a threatened injury through the lease which is apprehended, but there is an accomplished evil.

It is not like the case of an illegal assessment threatened to be collected, or an invalid instrument liable to be enforced, and which throws a shade over a title or interest, and which equity is asked to restrain and remove.

The complaint shows that, by an agreement valid on its face, the franchise of the ferries for a period of ten years has actually passed to the defendant, and that the lessee is in the actual use and uncontrolled enjoyment of the subject of the lease.

The fact, however, that the lease no longer throws a shade only over the plaintiff's title, but has conferred upon the defendants the substantial enjoyment of the property under a claim of right based upon the lease, is no reason why equity should not interfere and cancel the instrument, if it is in truth invalid, and the plaintiff is otherwise without remedy.

No actual fraud, in fact, is averred in the complaint, but the defendant is presumed to have known the extent of the powers of the commissioners, and their duty with respect to the property of the city of New York, in connection with the sinking fund, and the application by them of the rents and profits to the payment of the city stocks and the interest thereon.

I think the action is properly brought in the name of the municipal corporation, " in their own behalf and in behalf of all and singular the inhabitants and tax-payers of, and in the said city, and in behalf of all and singular the holders of the public stocks of the city.".

The contract which was the foundation for the lease was, in fact, made by the commissioners of the sinking fund. It is not like the case of a private person suing to avoid the consequences of his individual acts, or to have canceled an instrument made by himself individually.

I am of opinion that the municipal corporation stands in such relation to the property in question that it may properly ask a court of equity to examine into the validity of convey-. ances made by its officers, or persons upon whom duties are cast by law with respect to it, and seek to have instruments and deeds which convey away property to the injury of the tax-payers and creditors, and which are void or voidable, canceled and delivered up, so that the property may be applied to the purposes to which it has by law been pledged (*N. Y. and N. H. R. R.* agt. *Schuyler, supra*).

I would have preferred to have suspended a decision upon the questions involved in the defendant's motion until the facts presented by the defendant's answer on the merits were before me, and have then disposed of the whole case.

Evidence may yet be offered on the trial which may modify these conclusions and present the whole case in a different light.

But as the counsel for the defendant urged that his motion to dismiss the complaint, made at the opening, should be fully considered and decided before further proceeding with the trial, and, as such course was acquiesced in by the plaintiff's counsel, I have been compelled to examine the complaint, and, after giving the best consideration I was able to the objections urged, and the carefully prepared arguments of the counsel, I have come to the conclusion above indicated, that the defendant's motion must be denied.

The action was afterwards tried upon *the merits* at a special term of this court, whereupon the following opinion was delivered :

VAN VORST, *J.* — The substantial relief sought in this action is, that a lease to the defendant of certain ferries and their appurtenances be canceled, and that the possession of the ferries be restored to the plaintiff.

The question as to whether the action can be maintained has been heretofore considered at special term upon the motion to dismiss the complaint, when the subject was elaborately argued by the learned counsel now engaged, and the result reached, in substance, was that, upon the allegations contained in the complaint, the action was well brought by the plaintiff, and that, upon its undisputed averments, the plaintiff was entitled to the equitable relief which the complaint invoked.

The sufficiency of the complaint and the plaintiff's rights therefrom was then only considered.

Since then the action has been tried upon the merits, and the fundamental matters disclosed by the complaint, extrinsic to the lease under consideration, have been established by the evidence.

It has been proven that, at the time of the execution of the lease in question, there existed ordinances of the city corporation, approved by the legislature of the state, which created, established and guarded a sinking fund for the redemption of the city debt, which debt amounted at the time of the making of the lease to $40,000,000 and upward.

That the rents of all city property, not being quit rents or market rents, were, by the city ordinances, pledged to the sinking fund for the payment of the interest accruing and to accrue upon the stocks of the city of New York, until the same should be finally and fully redeemed.

And it was made the duty of the commissioners of the sinking fund to collect, receive and apply such rents to that part of the sinking fund to which they were so pledged.

That for several years preceding the commencement of the term under the lease, the subject of this action, the defendant held and occupied the ferries under a former lease for a term of ten years, at an annual rent of $103 000, which had been regularly paid into the city revenues.

That the ferriage received by the defendant under such former lease had enabled it to pay a dividend of ten per cent per annum to its stockholders upon a capital stock of $1,000,000, after discharging the rent.

That during the term of the present lease, which commenced on the 1st day of May, 1871, the receipts from the ferries received by the defendant have steadily increased over and above what they were during the previous term, and amount to nearly $1,000,000 per annum, enabling the defendant, not only to continue to pay its dividend of ten per cent per annum to its stockholders, but to carry over annually a surplus of earnings to a reserve fund.

The evidence shows satisfactorily that the rental value of the lease for the term under consideration is greater than that of the previous term, when the rent reserved was $103,000 per annum; and it also establishes the fact that the commissioners of the sinking fund have granted a lease of these ferries, which were of a greater rental value than the previous term, for a further term of ten years at a nominal rent of one dollar per annum. This I cannot consider they had any power legally to do.

I had occasion to say, on deciding the motion to dismiss the complaint, that the commissioners of the sinking fund were under a positive duty to the city of New York, its tax-paying inhabitants and creditors, to obtain the rental value of these ferries for the use of the sinking fund to which it was pledged.

The concession in the way of a reduction of fares to persons using these ferries during certain hours of the day cannot justify their action or uphold the lease, which is a direct impairment of the sinking fund and a diminution of its

resources. The commissioners had no right to give away to a private corporation, and for the benefit of its stockholders, the rent which was fairly demandable, and which, it appears, it was not unwilling to pay, upon the condition that persons crossing the ferry between the hours of five and half-past seven o'clock in the morning and afternoon of each day should be allowed to do so at a lower rate than those who should cross during other hours of the day.

This concession can in no just sense be regarded as an equivalent for the rent withdrawn from the sinking fund.

It could not be withdrawn for any such purpose, nor upon any such pretense. And, in addition, the result shows that such concession has not reduced the rental value of the ferries, as the receipts by the defendant are greater since the concession than before.

The pledge of these rents to the sinking fund is a trust which should be faithfully observed and sedulously guarded ; and the obligations resting upon public officers, upon whom duties are cast with regard to the funds of the city, should not be relaxed.

Judicial approval cannot well be invoked in favor of this transaction, nor should the making of a lease of property of so large a rental value for a nominal consideration of one dollar per annum by the commissioners of the sinking fund become, by the sanction of the court, a precedent.

The legitimate outcome of an approval of this lease would favor breaches of official duty, and would in the end defeat the creation of the fund to discharge the city debt, which good faith with creditors and the law itself demands.

I do not deem it necessary to reassert what was before said by me with respect to the performance of duty by persons designated by statute to hold official relations to a municipal corporation. I adhere to the views heretofore expressed. These duties must be well performed.

I cannot accept the proposition that the city stocks sought to be secured by the sinking fund were only those which

existed at the time of the adoption of the city ordinances of 1844 or the revision in 1859 (*Ordinances of the city, chap.* 9, *revision of* 1859, *art.* 1, *sec.* 1; *art.* 2, *sec.* 2; *art.* 3, *secs.* 3, 14, 18; *art.* 4, *sec.* 28; *chap.* 225 *of Laws of* 1845; *chap.* 137 *of Laws of* 1870).

I conclude the ordinances to be prospective as well as retrospective in their operation. Section 18, article 3, declares that the terms "city debt" and "city stock" shall be construed to mean any stock or fund created by the corporation of the city of New York.

The evidence shows that on the 31st day of December, 1870, six months after the date of the lease, but several months before the commencement of the new term, the funded debt of the city was $48,000,000. We are not in reason to assume that this great debt was created within six months after the date of the lease, or that it has since and before the commencement of this action been paid off and discharged. The reasonable presumption is the other way, and that the funded debt was in existence when the lease was made, and is still outstanding.

There was enough in the evidence, however, to call upon the defendant to establish the contrary if it could be proved.

The debt of $48,000,000, under the evidence, was the funded city debt, and is not presumably made up of temporary debts and loans authorized by the following acts: Chapter 697, section 8, Laws of 1867; chapter 564, section 4, Laws of 1865; chapter 565, sections 7 and 9, Laws of 1865; chapter 367, section 7, Laws of 1866.

The Laws of 1865 and 1866, above referred to, authorized no increase of the funded debt. They provided for temporary necessities in anticipation of the collection of assessments. The act of 1865 had relation to the stocks of the county, not of the city of New York. The indebtedness authorized by the act of 1867 was temporary, to be repaid by assessments collected or taxation.

The complaint alleges that under the previous lease and up

to the 1st of May, 1871, the defendant paid the annual rent of $103,000 to the proper officers of the city, who were required by law to collect the same for the use of the commissioners of the sinking fund, and this allegation of the complaint I understand the answer to admit. This I regard as a concession that the rents properly and legally went to the commissioners of the sinking fund, with which commissioners all negotiations for the present lease were had by the defendant, and by whom the lease was in fact made.

The fact that so much land in Brooklyn included in the former lease, which had been taken for the bridge tower and works, is not included in the present lease, does not meet the objection that the act of the commissioners in leasing property of great rental value at a nominal rent was *ultra vires*.

The defendant, with knowledge that the plaintiff's land, necessary for the bridge towers, was to be excluded from the future lease, placed a rental value upon the ferry franchises proposed to be granted by expressing its readiness to take the same at the former rent. That could not be legally given away for a supposed equivalent in a limited right to use the ferries by persons during certain hours of the day. The loss fell upon the sinking fund exclusively, and could not be effected under the provisions of chapter 163, Laws of 1862, section 3.

Besides, it was in no sense an equivalent.

There is a covenant in the lease that the defendant should pay such annual taxes as shall or may be imposed upon such parts of the demised premises as are situated in Brooklyn. What property was then subject to taxes, excluding that taken for the bridge towers, does not appear. There is no evidence of any amount of taxes paid or liable to be paid. Whatever they were, their payment does not aid the sinking fund.

It is not considered that this covenant is of any such moment or importance as to place the defendant under any burden to be taken into account in determining this controversy.

The present lease, as well as the former one, contained

covenants that new buildings should be erected at the expense of the defendant. No evidence has been given of any erections.

But both leases contain an agreement on the part of the plaintiff to pay at the end of the term all necessary expenses incurred in the erection of new buildings. While there might be an obvious propriety in such covenant to pay for all buildings and improvements under the former lease, by the terms of which there would be received in the city treasury in the way of rent over $1,000,000, there is an apparent want of reciprocity and justice in the conditions in the new lease, by which the lessor is obliged at the end of a term, during which it has received only the sum of ten dollars in all as rent, to purchase from the lessee at an appraised valuation the boats, buildings and other properties, from the use of which, under the ferry franchise, the defendant has received, for the advantage of its stockholders, many millions of dollars. From what source the means are to be gathered to make the repurchase the lease does not disclose.

But the provisions of the lease amount to this: The ferry franchises, under a nominal rent, are given to a private business corporation, who, through their use, by means of vessels and other property, receive, as gains upon their capital invested in the vessels and other property, many millions of dollars, and in the end receive back from the lessor in money the value of the property so invested.

The fact that during a period of many years conveyances have been made by the municipal corporation to charitable and benevolent institutions for nominal considerations is alluded to by the counsel for the defendant as an argument in favor of its power to control and dispose of its property in this manner. The legality of those conveyances cannot here be considered or passed upon.

Analogies of this character can add nothing to the true elucidation of the transaction we are now considering, which involves the legality of a lease to a business corporation for a

nominal consideration.    They cannot be logically cited to sustain the lease, and shed no true light upon the powers of the commissioners of the sinking fund, having well defined and important relations to the property of the city, and subject to the obligations and duties growing out of such relations, which must be faithfully observed.

The lease in question has not been validated, as is urged by the defendant's counsel, by any of the several acts of the legislature to which reference is made.    The legality of the lease has not been passed upon by these acts.    There is nothing in the acts in question which shows that the legislature had any such object in view, or that the design of the acts was to accomplish such result.

After a consideration of the arguments and brief of the learned counsel for the defendant, I cannot conclude that the lease can be upheld upon authority ; but contrariwise I think reason, justice and law is against its validity, and I conclude that there must be judgment for the plaintiff, as demanded in the complaint.