RICHARD WOODHULL, Respondent, *v.* MEYER ROSENTHAL et al., Appellants.

It is no objection to a recovery, in an action of ejectment, that the land in controversy is inaccessible, at the time of trial or judgment, so that the sheriff cannot deliver possession.

Where a conveyance is of a piece of land by defined boundaries, " with appurtenances," other land not included in the boundaries will not pass as appurtenant to the grant. All that can be claimed, as embraced in the word appurtenances, are easements and servitudes necessary to the enjoyment of the land conveyed.

Statement of case.

Where a lessee, by a written instrument, transfers to another, either with or without conditions, all of his interest in a portion of the demised premises, it is not a sub-lease, but an assignment *pro tanto;* and this, although the instrument is in form a lease.

*Martin* v. *O'Conner* (43 Barb., 522) and *Post* v. *Kearney* (2 N. Y., 394) questioned.

Upon a subsequent assignment, therefore, of his interest in the residue, no relation of landlord or tenant exists between the two assignees, and they owe no special duties, of a fiduciary nature, the one to the other.

Accordingly *held,* where the second assignee, knowing of the interests of the first, entered upon the latter's portion of the premises and made improvements thereon, that mere reticence or omission to assert his title on the part of the latter, in the absence of any act tending to mislead, did not estop him from claiming title and maintaining ejectment.

Where, prior to the trial of such an action the title of the plaintiff expires, he is entitled to recover the value of the lease, from the time of the unlawful entry, for the residue of the term.   (2 R. S., 308, § 31.)

In an action of ejectment it appeared that plaintiff owned a leasehold interest in the rear part of a city lot, and defendants a similar interest in the front part.   They had taken possession of the whole lot.   Plaintiff's term had expired prior to the trial.   *Held,* that the true method of ascertaining the *mesne* profits to which plaintiff was entitled was to ascertain the rental value of the whole lot and apportion it in accordance with the interests of the parties, giving the plaintiff his proportionate share.

Also, *held,* that, under the circumstances of the case, the value of the improvements made by defendant upon plaintiff's portion of the lot could not be set off.

(Argued September 17, 1874; decided January term, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff, entered on the report of a referee.

This was an action of ejectment, brought by the plaintiff as tenant in possession, for the term of thirteen years, from May 1, 1856, of the rear part of lot 189, Church street, New York city; and being also in the rear of thirty-seven White street.

The complaint alleged that on February 1st, 1866, the defendants wrongfully entered into, and still withhold possession of the same from the plaintiff, to his damage $3,000; and that the value of the use and occupation of the

premises since that time is $200 per month. He thereupon demanded judgment for the possession, for the damages, and for $200 per month for such use and occupation.

The defendants, besides a general denial, made the following answers: (1) They averred that the plaintiff had conveyed to third persons, in fee, the house and lot thirty-seven White street, with the appurtenances, and that these included the premises in question. (2) That the defendants Rosenthal and Levy, on January 10th, 1866, became owners of a lease, dated May 1, 1827, from Rebecca Slote, the owner of the fee, to William Kelly, of the entire lot known as 189 Church street, including the premises in question, for the term of forty-two years, without any knowledge of the plaintiff's estate in the premises; that they erected a building on the premises with the plaintiff's knowledge, without objection or notice by him to them, or any knowledge of his estate, until the building was so far advanced that its removal would inflict a loss of $25,000; and that the defendant fraudulently concealed the existence of his estate, whereby he is estopped from claiming any. It was further stated that the defendant Pecare is a tenant in good faith of Rosenthal and Levy, for two years and nine months, at the yearly rent of $8,500, and that Jacobs, Wolf and Whiteside, defendants, are tenants of Pecare. The defendants, in the course of the trial, amended their answer so as to set forth that the defendants Rosenthal and Levy made permanent improvements on the premises to the amount of $5,000, which they claim to set off against the plaintiff's claim for damages for use and occupation.

The plaintiffs claimed title under the lease from Rebecca Slote to William Kelly, set forth in the answer, through a lease from Kelly to John Horspool, dated June 15, 1840, for a term of twenty-nine years from May 1, 1840, of " the rear part of the lot known as number 189 Church street, including half of the privy thereon, and being that part directly in the rear of the dwelling-house No. 37 White street, which is now fenced in and forms the yard therefor, being the whole of the yard and privileges now fenced in," etc.

The defendants claimed under an assignment from the executors of William Kelly, of the lease first above named.

In order to establish their second defence, that the title was not in the plaintiff, and that he, accordingly, could not in any event maintain an action of ejectment, the defendants introduced in evidence the following instruments and evidence:

(1) The plaintiff, by deed from John Horspool, became the owner of lot No. 37 White street, and, at the same time the latter assigned to him the lease of the rear part of the lot 189 Church street, above described.

(2) Quit-claim deed from the plaintiff to James Burt, president of the Chester Bank, dated February 7th, 1862. The property conveyed was "the lot at the corner of Church and White streets, bounded westerly in front by Church street, northerly by White street, * * * containing in front and rear, each, twenty-five feet, and in length, on both sides, seventy-five feet." This conveyance included the lot thirty-seven White street, which was only twenty-five feet deep.

(3) *Covenant* of warranty by the plaintiff to Samuel Keyser, dated June 29, 1864, with the same description. It recited the quit-claim above stated to Burt, and his agreement to convey to Keyser, and conveys the property with the "*appurtenances.*"

(4) Deed from James Burt, president, etc., to Samuel Keyser. This deed is dated June 29th, 1864, and contains the same description, and purports to convey with the "appurtenances."

(5) A deed from Samuel Keyser to Jarvis Slade, dated October 14th, 1865. This conveys three-tenths of the same premises, with the appurtenances, as before.

The evidence on which the defendants relied to establish their defence of estoppel, was, substantially, as follows: On the 25th of June, 1864, the plaintiff hired of Keyser the premises No. 37 White street, to May 1st, 1866, and remained there, either personally or by tenants, until February 6th, 1866, when he quit the premises. Slade and Colby took pos-

session, and commenced to build, and have ever since been in occupation. The parcel of land now in controversy thus became isolated from the streets, and was surrounded by buildings; the plaintiff having no other interest than the unexpired lease of this isolated lot.

Solomon Levy, agent of the defendants Rosenthal and Levy, before the building was put up on 189 Church street, asked the plaintiff if he knew any thing about the land in controversy. He approached him as a stranger, without giving his name. There was testimony to show that the plaintiff then said that the occupant of No. 37 White street had a lease of the yard until the first of May. Levy then said that he had bought the lease of the lot adjoining, and wanted to know if he thought there would be any trouble with the tenant if he built on the yard. The plaintiff intimated that he thought there would be; and said that if he wanted to build on the lot he had better get a lease of the whole lot, and then no one could give him any trouble. The plaintiff did not, however, inform Levy that he had any interest in the land. It appeared that the defendants had the title searched. Levy testified that he could not get information from the plaintiff, and that he " dropped it and went to work outside of that." The plaintiff swore that he did not know that the defendants were building on his land until early in April. He went immediately to some of the defendants and informed them that he had a lease of the land and that they must desist, and they treated him in a defiant manner. He then went to his attorneys and caused a written notice of his title to be served on the defendants Rosenthal and Levy, referring them to his recorded lease, and requiring them to remove from the premises. The defendant Pecare was a tenant of Rosenthal and Levy; and the defendants Whiteside, Jacobs and Wolff were sub-tenants under Pecare. Some special questions as to their liability to the plaintiff were raised, and are considered in the opinion.

The referee found, as facts, that, on the 1st day of May,

1856, the plaintiff was possessed, as tenant, of the premises in litigation for the term of thirteen years; and that the defendants, on the 1st day of February, 1866, wrongfully entered into possession, and withheld it during the residue of the plaintiff's term. That his term expired on the 1st day of May, 1869, during the pendency of the action; and that the value of the use and occupation of the premises since the 1st day of February, 1866, was $250 *per annum*, amounting in all to $812.50. He then found, as a conclusion of law, that the plaintiff was entitled to recover the sum of $812.50.

Some of the evidence to show the value of the premises was admitted under exception. This is sufficiently set forth in the opinion.

*A. R. Dyett* for the appellants. Plaintiff cannot recover, because the sheriff could not deliver possession. (18 Barb., 484; *Childs* v. *Chappel*, 9 N. Y., 246; *C. and St. L. R. R. Co.* v. *Valentine*, 19 Barb., 484; *Brady* v. *Henion*, 8 Bosw., 528; *Bowie* v. *Brahe*, 4 Duer, 676; 2 R. S., 304, 306.) Plaintiff's estate in the land in controversy passed by his conveyance to Burt, confirmed by his subsequent warrant to Keyser as an appurtenant to the dominant estate. (*U. S.* v. *Appleton*, 1 Sumn., 492; 10 Pick., 138; 5 S. & R., 107; *Provost* v. *Calder*, 2 Wend., 317; Coke Litt., 121 *b*, 122, 307 *a*; *Nicholas* v. *Chamberlain*, Cro. Jac., 121; *Staple* v. *Hadyn*, 6 Mod., 1; *N. Ips. Fac.* v. *Bachelder*, 3 N. H., 190; *Cary* v. *Thompson*, 1 Daly, 35.) The lease from Kelly to Horspool was an under lease. (*Post* v. *Kearney*, 23 N. Y., 394; *Martin* v. *O'Conner*, 43 Barb., 514.) Plaintiff is estopped, in equity, from claiming the land from his landlords, and the estoppel extends to damages and *mesne* profits. (*Miller* v. *Platt*, 5 Duer, 272; *Brown* v. *Bowen*, 30 N. Y., 541; *Walter* v. *Post*, 6 Duer, 363.) Since the Code, a defence of an equitable character is admissible in an action of ejectment. (5 Duer, 284; 2 Kern., 266; 21 N. Y., 581; 40 Barb., 537; 30 id., 621; id., 633; 19 How., 430; *Malony* v.

*Hernan*, 8 Am. L. Reg., 751; *Chapman* v. *Chapman*, id., 756; 5 J. Ch., 184; 27 Barb., 595; 4 Paige, 494; *Walter* v. *Post*, 6 Duer, 363, 368, 371; *Laverty* v. *Moore*, 32 Barb., 347; *Corkill* v. *Landers*, 44 id., 218; *Christianson* v. *Sanford*, 19 Abb., 221; *Thompson* v. *McKeon*, 8 Bosw., 103, 111; 6 Hill, 47; 3 Comst., 511; *Sahler* v. *Signer*, 44 Barb., 606.) The permissive re-entry of the landlord with knowledge of the tenant, after he had ceased to occupy the premises, operated as a surrender. (2 R. S., 135, § 6; *Hegeman* v. *McArthur*, 1 E. D. S., 147; *Van Rensselaer* v. *Hayes*, 5 Den., 477; *Stratton* v. *Lord*, 22 Wend., 611; *Jackson* v. *Collins*, 11 J. R., 1; *Jackson* v. *Vincent*, 4 Wend., 633; *Tyler* v. *Heidan*, 46 Barb., 439, 455; *Shannon* v. *Burr*, 1 Hilt., 39.) It was not the benefit to the defendants, but the loss to plaintiff, which constituted damages. (11 Wend., 149; 17 id., 649; 1 id., 262; 2 id., 472; 8 id., 85; 11 id., 486; 1 Hill, 189, 191; 15 Wend., 464; 23 id., 643; 19 id., 678; 4 Bradf., 503; 32 Mo., 36; *Stickney* v. *Allen*, 10 Gray, 352, 530.) The true rule of damages was the value of the unexpired term, less the rent reserved. (*Mack* v. *Patchin*, 42 N. Y., 167, 176; *Trull* v. *Granger*, 8 id., 115; *Holmes* v. *Davis*, 19 id., 488; 6 id., 90; 2 id., 510; 9 id., 183; 7 Hill, 261; 4 Den., 370; 4 Barb., 256; 17 id., 561; 52 id., 15, 24; 10 How. Pr., 467; 5 Hill, 603; 17 Wend., 136; 23 id., 425.)

*James E. Dewey* for the respondent. An appurtenance to land can only be an easement. (Coke Litt., 121 *b*; *N. Y. C. R. R. Co.* v. *B. and A. R. R. Co.*, 49 Barb., 502; *Harris* v. *Elliott*, 10 Pet., 25, 54; *Leonard* v. *White*, 7 Mass., 6, 8, 9; *Jackson* v. *Hathaway*, 15 J. R., 448, 454, 455.) Plaintiff was not estopped. (*Miller* v. *Platt*, 5 Duer, 278–285; *Christianson* v. *Linford*, 3 Robt., 215, 223–231; *Sahler* v. *Signer*, 44 Barb., 607, 615.) Plaintiff was entitled to recover a reasonable satisfaction for the use and occupation of the premises. (2 R. S., 310, § 45; 311, § 54; *Holmes* v. *Davis*, 19 N. Y., 488; *Van Devoot* v. *Gould*, 36 id., 646, 647.) The lease from Kelly to Horspool was an assignment *pro tanto*.

(*Redford* v. *Terhune*, 30 N. Y., 453, 457, 458; *Mack* v. *Patchin*, 42 id., 167.)

DWIGHT, C. The defendants rely upon a number of propositions which they deem fatal to the plaintiff's case.

I. They claim that the plaintiff cannot recover, because the sheriff could not deliver possession.

This is a misconception of a well known rule of law that where the property is not, *in its own nature*, capable of physical possession, an action of ejectment will not lie. A common example is an easement or other incorporeal hereditament. (*Child* v. *Chappell*, 9 N. Y., 246; *Rowan* v. *Kelsey*, 18 Barb., 484; *C. and St. Law. R. R. Co.* v. *Valentine*, 19 id., 484.) These cases lend no countenance to the idea that land itself cannot be recovered in ejectment because it happens to be inaccessible at the time judgment is entered, or during the trial. If that were the case, should highways be obstructed by a freshet so that the sheriff could not approach the land, no judgment in ejectment could be entered. The legal proceedings would be suspended until the water subsided. Such a conclusion is absurd. The fact is, that the judgment can be rendered wherever the title to land, or a corporeal estate in it, is in controversy. Delivery by the sheriff is a matter arising subsequently, and is an executive act following upon the judicial determination as to the title.

II. The defendants further claim that all title to the property in controversy had passed from the plaintiff when the action was commenced, and, accordingly, that he has no cause of action against them. Their argument upon this point is, that the plaintiff conveyed to Burt, or to Keyser, the lot on the corner of White and Church streets, of such dimensions that it included 37 White street (as set forth in the statement of facts), with the "appurtenances." The description in that case embraced a lot of land with defined boundaries. It was referred to as being on the corner of Church and White streets and composed of parts of lots of designated numbers and as containing, respectively, on the front and rear twenty-

five feet, and on the sides seventy-five feet. Such language cannot be held to include adjoining property not described, unless it can be embraced within the word "appurtenances." The meaning of this term is now well ascertained by adjudged cases. A thing "appurtenant" is defined to be a thing used with and related to or dependent upon another thing *more worthy*, and agreeing, in its nature and quality, with the thing whereunto it is appendant or "appurtenant." It results from this definition that land can never be appurtenant to other land, or pass with it as belonging to it. (*Jackson* v. *Hathaway*, 15 J. R., 447, 454; *Matter of N. Y. Cent. R. R. Co.*, 49 Barb., 501, 505; *Harris* v. *Elliott*, 10 Pet., 54; *Leonard* v. *White*, 7 Mass., 8, 9.) All that could be reasonably claimed is, that the word "appurtenances" will carry with it *easements* and *servitudes* used and enjoyed with the lands for whose benefit they were created. Even an easement will not pass unless it is necessary to the enjoyment of the thing granted. (*Gayetty* v. *Bethune*, 14 Mass., 49; Wash. on Easements, 161; 3 Wash. on Real Prop. [3d ed.], 340, 341.)

In the case at bar no title passed to the *locus in quo* under the conveyances to Burt and Keyser. Nor did there any easement attach to it in favor of the owners of 37 White street, as the acts of those persons plainly showed that it was wholly unnecessary to the enjoyment of the property acquired by their conveyances. The plaintiff, accordingly, was owner of an estate in the lot in controversy, and was entitled to an action of ejectment to recover it unless the defendants have additional grounds for defeating a recovery.

III. The defendants, however, claim that, conceding that the plaintiff has an estate in the land, he is estopped from claiming it by a fraudulent concealment of his title.

An apparently good answer to this claim is made by the plaintiff, to the effect that the referee has made no finding upon this subject. He should have been called upon by the defendant, specifically, to find such facts and conclusions as shall, upon the evidence, be regarded as material to the issue. Should this application have been denied, the materiality of

the findings asked for can be determined on appeal to the General Term, or to this court. (*Meacham* v. *Burke*, 54 N. Y., 217; *Grant* v. *Morse*, 22 id., 323; *Van Slyke* v. *Hyatt*, 46 id., 259; *Lefler* v. *Field*, 47 id., 407; *Morgan* v. *Mulligan*, 50 id., 665; *Rogers* v. *Wheeler*, 52 id., 262.) This rule is not to be departed from in the present case, though the facts constituting the alleged estoppel were set up in the answer. There was but one course for the defendants to pursue. If the referee omitted to make the necessary finding one way or the other, they should request him to make the desired finding, and obtain either that or a refusal, and, upon that, take such steps as they might be advised.

If, however, the subject be open to consideration here, it would be impossible to support the contention of the defendants. There was no evidence to sustain an estoppel. There was no relation of landlord and tenant between the defendants and the plaintiff, as the defendants' counsel maintains. The owner of the lease of the lot in controversy made over to the plaintiff's assignor his entire interest in the lease, so far as the *locus in quo* was concerned. It was not a sub-lease, but an assignment of all the lessee's interest in a part of the premises. If a lessee has two houses embraced in one lease at an entire rent, and sells all his interest in one of the houses, this is an assignment *pro tanto*, and not a sub-letting. It is immaterial what form of instrument is used, whether it purports to be an assignment or a new lease. The essential distinction between an assignment and a sub-lease is simply this: If a lessee, by any instrument whatever, whether reserving conditions or not, parts with his entire interest, he has made a complete assignment; if he has transferred his entire interest in a part of the premises, he has made an assignment *pro tanto*. If he retains a reversion in himself, he has made a sub-lease. (*Bedford* v. *Terhune*, 30 N. Y., 454, 457 [A. D. 1864].) It is there said, that "it is essential to an under-tenancy that it be of a part only of an unexpired term." It is true that *Martin* v. *O'Conner* (43 Barb., 522), holds that though the lessee transfers his entire term, if he

takes a covenant from the transferee to surrender up possession to him at the expiration of the term, and reserves a right of entry in case the rent is not paid, the transaction is a sub-lease, and not an assignment. This case is rested upon the decision in *Post* v. *Kearney* (2 N. Y., 394). That case goes upon the ground that there was an express clause in the lease providing for a surrender by the derivative lessee to the lessee. It was considered, as far as I can understand the case, that this created a sort of reversion in the lessee, and made the transaction an under-lease. It is certainly difficult to reconcile *Post* v. *Kearney* and *Martin* v. *O'Conner* with *Bedford* v. *Terhune*. In this last case, it is said that when there is a transfer of the whole of a term, the person taking is an assignee, and not an under-tenant, although there is, in form, an under-letting. The views in *Bedford* v. *Terhune* are sustained by the late English decisions, and the general weight of authority. (*Langford* v. *Selmes*, 3 Kay & J., 226, 229; *Pluck* v. *Digges*, 5 Bligh [N. S.], 31, 65; *Parmenter* v. *Webber*, 8 Taunt., 593; *Hicks* v. *Dowling*, 1 Ld. Raym., 99; *Lloyd* v. *Cozens*, 2 Ashm., 138; *Palmer* v. *Edwards*, Doug., 187, *n; Doe* v. *Bateman*, 2 B. & Ald., 168.) The rule is stated in very clear form in Bacon's Abridgement: "Where the whole term is made over by the lessee, although in the deed by which that is done the rent and power of entry for non-payment are reserved to him, and not to the original lessor, this is an assignment, and not an under-lease, * * * and this although new covenants are introduced in the assignment." (Bacon's Abr., Leases, I, 3.) The case at bar resembles this statement by Bacon. There was an agreement by Horspool to surrender at the end of his term, but no specific agreement to surrender to the lessee (Kelly). The case does not, therefore, fall within the precise ruling in *Post* v. *Kearney*. The doctrine of that case is not to be extended, the theory in *Bedford* v. *Terhune* being more in accordance with principle and authority.

The result is, that in the case at bar the plaintiff cannot be regarded as an under-tenant of the defendants Rosenthal

and Levy, but each were assignees of a portion of the term, and owing no special duties, one to the other, of a fiduciary nature.

From this point of view there is no sufficient evidence to constitute an estoppel. The parties were at arms length. The defendants searched the title and knew the extent of the plaintiff's interest, as his lease was on record. Mr. Woodhull was, plainly, reticent, and not open or candid in his intercourse with the defendant; I think, however, that there was no conduct on his part to mislead them; and the evidence plainly shows that they were not misled; they chose to go on and build, and run their risk as to his title.

IV. The leading question in the cause is, whether the referee, at the trial, committed an error in allowing certain evidence, by experts and others, as to the value of this property. During the course of the litigation the plaintiff's lease expired; so the whole controversy betwen the parties turned upon the amount of the damages which the plaintiff sustained by the defendants' wrong. The case thus falls within second Revised Statutes, 308, section 31: "If the right or title of a plaintiff in ejectment expire after the commencement of a suit, but before trial, the verdict shall be returned according to the fact, and judgment shall be entered that he recover his damages by reason of the withholding of the premises, by the defendant, to be assessed."

This is one of those general provisions which apply to actions under the Code. (*Lang* v. *Wilbraham*, 2 Duer, 171.) It was also a recognized rule of the common law, and was the only case in which actual, as distinguished from nominal, damages could be recovered in an action of ejectment; it being necessary, in other cases, to make a separate claim for *mesne* profits. (Sedgwick on Damages, 120; *Jackson* v. *Davenport*, 18 J. R., 295; *Wilkes* v. *Lyon*, 2 Cowen, 333.)

In the present case the claim is, in substance, one for the profits of the lease. In other words, the plaintiff is entitled to recover the value of the lease for the residue of the term. (Sedgwick on Damages, 123, note 1.) This is not, necessarily

the rent, but the true value. In *Trull* v. *Granger* (8 N. Y., 115), a distinction was taken between rent and value, it being held, that in an action by a lessee against a lessor, whether in contract or tort, for a failure to deliver possession, the meas- ure of damages is the difference between the rent reserved and the value of the premises during the term.

The authorities show that the rule as to damages, in an action of ejectment, was very uncertain at common law. The cases are collected by Mr. Sedgwick in his work on damages (pages 124, 125). An approved writer, Mr. Adams, sums up the result of them by stating that "the jury are not con- fined to their verdict, to the mere rent of the premises, but may give such extra damages as they think the particular cir- cumstances of the case demand." (Adams on Ejectment, 391; *Goodtitle* v. *Tombs*, 3 Wils., 118; remarks by Lord Mansfield and Mr. Justice Buller, in *Goodtitle* v. *North*, 2 Douglas, 584; *Dewey* v. *Osborn*, 4 Cowen, 329.) Mr. Sedg- wick disapproves of these dicta, but is unable to announce any rule which will cover all the cases. In this uncertainty of the law, the Revised Statutes have wisely provided the courts with a general rule which they are required to follow. The action for *mesne* profits is now, in substance, an action for use and occupation, and the complaint is to be drawn on that theory; and the court is to render judgment, as in actions of "assumpsit, for use and occupation." (See *Holmes* v. *Davis*, 19 N. Y., 488.) Although the present case is not strictly for *mesne* profits, yet it is so clearly within its analogy that the rule of the statute should be applied to it. (2 R. S., 310, 311, §§ 43–55.) In the action for use and occupation, a landlord may recover a *reasonable* satisfaction where the agreement for the occupation is not made by deed. (1 R. S., 748, § 26.) The English statute (11 Geo. II, chapter 19, section 14) is to the same effect. Where a rent is reserved in such an agreement, that may be made use of as evidence of the amount of damages to be recovered.

Under these rules, the regular recovery would be the rental value of these premises. It will be remembered that the

plaintiff's interest and that of the defendants form distinct parts of one entire city lot, which has, as a whole, a settled rental value.   The true theory of the case is to determine what the whole annual value of the lot would be if a stranger had taken possession of the whole of it, and the owner had then sought to recover the profits in an action for use and occupation.   Having thus obtained the entire value, it should be apportioned among the respective owners, according to their interests.   If the defendants' interest is worth twice that of the plaintiffs, they should allow the plaintiff one-third of the rental value.   No other theory would be " reasonable," within the meaning of the statute.   Suppose, for example, there were a city lot of twenty-five feet in width, and 100 in depth.   Of this, A. owns the first four feet on the street, and B. the remaining ninety-six feet.   If C. should build upon the lot, it would be easy to ascertain how much of the rental value should be apportioned between A. and B. Would the question be at all different if A. should himself, without the consent of B., occupy the entire lot ?   Plainly not.   There could be no reason given for one rule in the one case and another in the other.   This will be adopted as the rule applicable to the case at bar.

It is now time to consider whether, on this principle, the referee erred in admitting the evidence to which the defendants object.   The witness Lloyd was asked the question : "Do you know the value of the use of the premises 189 Church street during 1866, 1867, 1868 ? "   To this he was allowed to answer that he did, and that it was $700 per year. In answer to a question by the referee, he stated that the rear part of the lot in fee was worth $10,000, and that he calculated $700 *per annum* on that as a fair rental value.   This was one mode of getting at the value of the property ; and as a circumstance to be taken into account was not objectionable.   It was not, however, the strictly accurate mode of reaching the true result.

There were other questions admitted, on what I deem to have been erroneous theories, apparently entertained by

counsel on both sides; one of them insisting, that as the rear part of the lot had no approach from the street the lease was really of no value, and the other claiming that the true measure of value was the advantage derived by the defendants by means of their encroachment. There was enough evidence properly admitted in the case to show the real value of the lot and its separate portions. Rosenthal, one of the defendants, swore that the front part of the lot for the time that he enjoyed it was cheap at $10,000. His lease then had about three and a half years to run. This estimate would make the annual value of that portion of the premises $2,850 per year. On his cross-examination he testified that the whole value of the lot, in 1866, was $25,000, and that the front was worth twice as much as the rear; and that, figuring the value on this estimate, the front was worth $2,665. He also said, that if the lot was 100 feet deep the rear would be only one-quarter the value of the front. He took fifty feet for the front, and twenty-five feet in the rear would be worth one-half, and twenty-five feet still further back one-quarter of such front. This evidence is not disputed.

The plaintiff's lot contained about 333 square feet. The whole number of square feet in the lot was 1,825 (twenty-five by seventy-five). Estimating the front as worth twice as much as the rear, the plaintiff would be entitled to about one-ninth of the rental value, which would exceed $250 per year, the sum that the referee allowed. The irregular testimony could not possibly have harmed the defendants, as on their own showing they ought to pay the amount awarded. It is unnecessary, therefore, to consider, in detail, the objections to the evidence.

There is no foundation for the claim of the defendants that the value of the improvements made on the plaintiff's portion of the lot should be set off against his cause of action for damages. It is only a *bona fide* occupant of land who is allowed to mitigate the damages by offsetting the value of his improvements to the extent of the rents and profits claimed. This was the rule of the civil law which has gone furthest in

allowing this class of defences. The mitigation of damages in this manner is made on equitable grounds, and it would be plainly inequitable to allow them to one who acted with knowledge of the plaintiff's rights. (*Green* v. *Biddle*, 8 Wheaton, 1 ; *Dothage* v. *Stuart*, 35 Mo., 251 ; *White* v. *Moses*, 21 Cal., 34 ; Sedgwick on Damages, 126, 127 ; *Jackson* v. *Loomis*, 4 Cow., 168 ; 2 Kent Com. [12th ed.], 334–338, and cases cited.) As the defendants had full means of knowledge of the plaintiff's claim, they cannot bring themselves within this rule. Moreover, the improvements did not *increase the value* of the plaintiff's interest. The rule of the civil law was, that the *bona fide* possessor was entitled to be reimbursed, by way of indemnity, the expenses of beneficial improvements, so far as they augmented the property in value, on the ground that no one ought to be enriched at the expense of another. This rule ought to be applied to the present case, since the damages represent the value of the property to be recovered in the ejectment ; and they should not be diminished, except by proof that the plaintiff has received some portion of the amount in another form. The building was, plainly, of no use to him as lessee, and it would be manifest injustice to make any deduction on account of it. Such a case would justify the strong remarks of an excellent writer, criticising the whole doctrine of setting off the improvements against the damages : " Such a rule," he says, " does not seem well founded as a mere matter of natural justice. The improvements may be very valuable, but they may be quite unsuited to the use which the plaintiff intends to make of his land. Even if they are such as he would have wished to make, they may also be such as he could not have afforded to make. To compel him to pay for them or to allow for them in damages, which is all the same, is quite as unjust as it would be to lay out money in any other investment for a man, and then compel him to adopt it *nolens volens*." (Mayne on Damages, 255.) While the general rule is too well settled in the United States to be departed from, yet there is no reason why it should be extended to a case

where the plaintiff receives no benefit from the expenditure.

V. The final claim of the defendants is, that the referee erred in ordering judgment against Pecare and his sub-lessees. They, however, put in answers setting up their title, and litigated the case. Jacobs, Woodhull and Whiteside averred that they were tenants of the building erected on the premises, for the term of two years and seven months, under Pecare. Pecare set up that he was a tenant under Rosenthal and Levy for the term of two years and nine months. The referee finds that they were in possession of the premises and wrongfully withheld them from the plaintiff for the whole of his unexpired time. Although there may have been some contradictory testimony in the case, yet there was some evidence on which the finding of the referee can be based, and his decision cannot be reviewed in this court.

The judgment of the court below should be affirmed.

All concur.

Judgment affirmed.