### THOMPSON *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

[No. 10,581. Filed December 17, 1920. Rehearing denied February 24, 1921. Transfer denied April 22, 1921.]

1. IMPROVEMENTS.—*Improvements by Occupying Claimant.— Right to Relief.—Amount of Recovery.—Statute.*—Under the occupying claimant statute (§1121 *et seq.* Burns 1914, §1074 *et seq.* R. S. 1881), an occupying claimant can recover only the value of the improvements to the extent that they increase the value of the real estate upon which they are mistakenly placed, and to the extent that such improvements benefit the owner of the realty, regardless of the cost of the improvements or their value to the occupying claimant who mistakenly located them. pp. 413, 414.

2. IMPROVEMENTS.—*Improvements by Occupying Claimant.— Right to Recover Under Common Law.*—Under the common law an occupying tenant had no right of recovery from the owner of land for improvements mistakenly made thereon, but the claimant lost them, though he had acted in good faith and under color of title. p. 414.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by Kate Thompson against the Illinois Central Railroad Company. From judgment for defendant, the plaintiff appeals. *Affirmed.*

*Charles E. Bedwell* and *John W. Lindley,* for appellant.

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor, W. Paul Stratton, Walter S. Horton* and *R. V. Fletcher,* for appellee.

NICHOLS, J.—It appears by the special findings that appellee's railroad crossed, diagonally from northwest to southeast, lot No. 9 in the original town of Dugger, Indiana. Appellant was the owner of that part of said lot which was located in the northeast corner thereof, and northeast of appellee's right of way. In March, 1913, appellant began the construction of a two-story brick building on that part of said lot No. 9 so owned by her as aforesaid, locating the same so that the southwest wall thereof was upon appellee's right of way. Before the commencement of such building she had an abstract showing appellee's deed to the right of way, and she was familiar with the location of the railroad track, telegraph poles and wires, and of the use made of the same in the operation of appellee's trains. On July 10, 1913, when appellant had completed but little of her proposed improvement at a cost at that time of but $110, appellee notified her of its claim and ownership of the ground upon which such southwest wall was

located. At the time that appellant received a quitclaim deed for lot No. 9 which was before the commencement of the construction of said building, she and her attorney, with whom she was advising, had in their possession a plat of the lands upon which the improvements in controversy were situated, which plat showed that the land upon which said wall was located was the property of the appellee. But appellant's attorney informed her that she had a good title to said real estate, and advised her to construct said building on the same, and the court found that at no time prior to July 10, 1913, did appellant know or believe that appellee was claiming title or right to said real estate, and that she acted in good faith in locating and constructing her building thereon, believing that she was the owner thereof. Appellee began suit in ejectment August 12, 1913, at which time the part of the building on appellee's right of way had cost appellant $400, though standing alone and disconnected from any building, it had no market value, and a salvage value of but about $65. It was not permanent and lasting, and it was of no value to the ground on which it was built, so far as appellee was concerned; but it was permanent as a part of the brick building erected by appellant. At said time, the entire building, including said southwest wall, had a value of $3,000, and on January 21, 1915, being the time of the judgment in ejectment in favor of appellee, it had been completed and had a value of about $3,500. Appellant uses much space in both her original and reply briefs in attempting to show that these values pertain only to the part of the building on the lands in controversy; but we have no hesitation in saying that she misinterprets the finding. The real estate upon which said southwest wall was built had a value, unimproved of about $15. The improvements on the right of way are not permanent and lasting, and are of no value to appel-

lee, and are of no value when considered alone and apart from the lands of appellant.

On April 10, 1915, and before execution had issued in ejectment, appellant commenced her action as occupying claimant, demanding that no execution issue against her until appellee pay her the full value of her improvements. The findings are long, but the foregoing is a sufficient synopsis of the facts to present the question involved.

The court stated as conclusions of law that appellee, at its option, had the right to pay to appellant within 190 days the sum of $68.25 and take the property. Should appellee fail to pay appellant said sum of $68.25 within 190 days, then the appellant might at her option, within 220 days pay appellee the sum of $15 and take the property. In the event that neither appellee nor appellant exercise the option given them in their order, they shall take and hold said land in controversy, together with the improvements thereon, as tenants in common; appellee holding an undivided 20/111 thereof, and appellant an undivided 91/111 thereof.

Appellant complains that the court erred in its first conclusion of law, in this: That it stated the amount appellee should pay to appellant to be $68.25, which was the salvage value of the wall located upon appellee's real estate, plus $2 street assessment, and $1 taxes, and twenty-five cents interest, instead of $3,503.25, which was the total value of the improvements.

It is provided in the Occupying Claimant's Statute, (§1121 *et seq.* Burns 1914, §1074 *et seq.* R. S. 1881) that when an occupant of land has color of title
1. thereto, and in good faith has made valuable improvements thereon, and is afterwards in the proper action found not to be the rightful owner thereof, no execution shall issue to put the plaintiff in possession of the property, until the provisions of the act are com-

plied with; the provisions referred to pertaining to the assessment by the court or jury of the value of the lasting improvements made on the lands occupied by them, the damages which the premises have sustained, and the value of the estate which the successful claimant has in the premises without the improvements, and the taxes and interest paid by the occupying claimant, and by those under whom he claims. When these values are determined, the plaintiff may pay the appraised value of such improvements, with taxes and interest, after deductions not involved in this action, and take the property, and failing so to do within a reasonable time fixed by the court, the defendant may take the property upon the payment of the appraised value of the land aside from the improvements. It will be observed that the trial court in stating its conclusions of law and rendering judgment, has followed the provisions of the statute. Under the common law there was no

2. right of recovery from the owner for improvements made in good faith and under color of title; but the occupying claimant lost such im-

1. provements, even though he had acted in good faith and had color of title. But the more liberal rule of the civil law has been substantially adopted in Indiana by statutory enactment. *Westerfield* v.. *Williams* (1877), 59 Ind. 221. But under the statutory rule it must be held that the appellant as occupying claimant, can recover only the value of the improvements to the extent that they increase the value of the real estate upon which they were mistakenly placed, and to the extent that such improvements benefit the owner of such real estate, and regardless of the cost of such improvements, or their value to the party so mistakenly locating them. In *Woodhull* v. *Rosenthal* (1875), 61 N. Y. 382, the court, discussing the principle, says: "The improvements may be very valuable,

but they may be quite unsuited to the use which the plaintiff intends to make of his land. Even if they are such as he would have wished to make, they may also be such as he could not have afforded to make. To compel him to pay for them or to allow for them in damages, which is all the same, is quite as unjust as it would be to lay out money in any other investment for a man, and then compel him to adopt it nolens volens. (Mayne, Damages 255.) While the general rule is too well settled in the United States to be departed from, yet there is no reason why it should be extended to a case where the plaintiff receives no benefit from the expenditure."

In 22 Cyc 26, the rule is stated as follows: "In the absence of a statute to the contrary, the general rule is that the amount which a *bona fide* occupant of lands is entitled to recover for improvements made thereon is not the cost of the improvements to him, but the amount which they enhance the value of the property to the owner, * * *." Many authorities are cited to sustain the rule, which is an equitable one. To the same effect see 14 R. C. L. 25; 9 R. C. L. 952, 953.

The trial court committed no error of which appellant can complain. The judgment is affirmed.