■ BOARD OF MANAGERS OF THE EUROPA CONDOMINIUM, Appellant, v JEFFREY ORENSTEIN, Respondent. [722 NYS2d 527] —Order, Supreme Court, New York County (Jane Solomon, J.), entered June 15, 1999, which directed plaintiff to execute, within 24 hours of its presentment, defendant's application for a building permit and which, upon plaintiff's refusal, granted defendant authority to execute it on plaintiff's behalf, affirmed,

without costs. Order, same court (Franklin Weissberg, J.), entered April 12, 2000, which denied plaintiff's motion to modify the June 15, 1999 order to the extent of declaring that defendant had no right to execute the building permit application on plaintiff's behalf, and which granted defendant's cross motion for a declaration that he was entitled to submit the application to the Buildings Department without plaintiff's approval, affirmed, without costs.

Defendant is the owner of the single commercial unit in the Europa Condominium, governed by plaintiff Board of Managers, which otherwise consists of 26 residential units. The commercial unit is located at the southwest corner of the building on three levels, comprising a portion of the cellar floor, a portion of the lobby on the ground floor and a "mezzanine" level in between. This dispute concerns defendant's proposed addition of some 585 square feet of floor space by extending the poured concrete slab forming the mezzanine floor.

As noted in Supreme Court's order entered June 15, 1999, the concrete floor is located wholly within defendant's commercial unit and forms no part of the common elements of the condominium. Therefore, the court properly found that extension of the slab was not subject to approval by plaintiff Board of Managers. Plaintiff has not established that the proposed alterations would adversely affect the use of the residential units for their intended purpose, and the consent of the condominium's residential owners was therefore not required.

While the ground under the cellar floor is defined as a common element, the by laws provide that the board will approve the commercial owner's alterations to common elements if the improvements do not adversely affect operation of the building, its systems and structural integrity, do not impair the use of residential units and do not encroach on common areas. The condominium declaration grants defendant the right to make alterations, "whether structural or nonstructural, interior or exterior, ordinary or extraordinary" as long as the structural integrity of the building is not impaired and the work does not involve a physical modification to other units or to common interests. To the extent that the project involves excavation, plaintiff has failed to demonstrate that such work on a surface contained entirely within the boundaries of the commercial unit will violate these conditions or offend the laws of this State (*see*, Real Property Law §§ 339-i, 339-k).

In our estimation, the dissenter reads Real Property Law § 339-k too broadly, in effect rendering the qualification of "affected" to "unit owners" mere surplusage (*Matter of Brusco v*

*Braun,* 199 AD2d 27, 30, *affd* 84 NY2d 674; *see also, Sanders v Winship,* 57 NY2d 391, 396; McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]). While "affected" is not defined in the Condominium Act (Real Property Law art 9-B [§ 339-e]), its import can be gathered from an examination of section 339-i (2), which provides: "The common interest appurtenant to each unit * * * shall have a permanent character and shall not be altered without the consent of all unit owners affected * * * The common interest shall not be separated from the unit to which it appertains. Nothing contained in this article shall prohibit the division of any unit and common interest appurtenant thereto in a non-residential unit in the manner permitted by the declaration and bylaws." It is apparent that the requirement to obtain the consent of "affected" unit owners before proceeding to "excavate any additional basement or cellar" (§ 339-k) denotes the owners of units "appurtenant" to the common interest—the land (§ 339-e [3] [a])—which is sought to be altered (§ 339-i [2]). While any alteration that threatens the integrity of the structure is a common concern to all unit owners, had the Legislature intended to require their consent, it would have provided for "the unanimous consent of the unit owners" (§ 339-*l* [1] [lien against common elements]). Moreover, nothing in the statute or bylaws abrogates the necessity to obtain a building permit before undertaking construction, and the Buildings Department may be relied upon to exercise the requisite oversight to see that structural integrity remains unimpaired.

The alteration sought to be made by the owner of the commercial unit is expressly contemplated by the applicable statute (§ 339-k) and specifically permitted by the condominium bylaws. Section 5.2 (B) provides that, contrary provisions notwithstanding, "the Commercial Unit Owner shall have the right pursuant to the terms of Article 12 of the Declaration, without the approval of the Condominium Board, to (I) make any alterations, additions, improvements, or repairs in or to the Commercial Unit * * * whether structural or non-structural, interior or exterior, ordinary or extraordinary." Article 12 of the declaration specifically confers the right "to change the size of Commercial Units by * * * altering the boundary of the Commercial Unit (including, without limitation, incorporating in such Commercial Unit a space or other area forming a part of the Common Elements which services or benefits only such Commercial Unit and does not affect access to any other Unit)." This provision clearly encompasses the land beneath the commercial unit, which constitutes part of the "common elements" within the definition of article 7.

Concur—Tom, J. P., Ellerin, Wallach and Rubin, JJ.

Saxe, J., with respect to the appeal from the order entered April 12, 2000, dissents in part in a memorandum as follows: I concur with the majority regarding the first order under appeal (Appeal No. 2592N), which authorized defendant to execute, on plaintiff's behalf, the permit application regarding the proposal to construct a concrete floor slab located completely within the boundaries of his Commercial Unit. Pursuant to section 5.2 (B) of the By-laws, this proposed alteration was permissible without the consent of the Board. However, I cannot agree that the subsequent order, entered April 12, 2000 (Appeal No. 2593N), which in effect permitted unilateral excavation below and enlargement of defendant's Commercial Unit, was justified by the first order, nor that it comports with the Condominium's Declaration, its By-laws, or the Real Property Law.

Facts

Defendant is the owner of the Commercial Unit (the Unit) in the Europa Condominium, located at 22 West 66th Street in Manhattan. The Europa consists of 26 residential units located on floors two through penthouse, and the Commercial Unit, which is located at three levels consisting of a portion of the cellar, the cellar mezzanine and a portion of the first floor, which is on the building's entrance level.

Pursuant to article 6 of the Condominium Declaration, the boundaries of the Unit are located vertically from the top of the concrete cellar floor to the underside of the concrete ceiling, together with the roof and skylight. Pursuant to the Certificate of Occupancy and the Europa Declaration and By-laws, the Unit may be used by defendant or his tenant as a restaurant.

The Declaration and By-laws also provide the Unit with various easements and rights to use Common Elements.

The condominium's affairs are governed by the Condominium Board, consisting of five members elected by the residential owners and one member designated by the owner of the Commercial Unit. However, although the Board makes decisions for the condominium, section 2.17 (B) (ii) of the By-laws provides that "any decision affecting only the Commercial Unit shall be made by the member elected or designated by the Commercial Unit Owner."

In May 1999, the architect hired by defendant submitted an application to the Department of Buildings (DOB) for a work permit. Part of the work proposal was an addition of a 585 square foot concrete floor slab over the cellar level of the Unit to extend the floor of the mezzanine level horizontally by adding a floor over the cellar level. This addition, solely within the boundaries of the Unit, would be used for restaurant seating,

and the new covered cellar would become the kitchen. The proposed work also included connecting the Unit's utility systems between the Unit and the mechanical room of the building, which area is designated as a Common Element. This application to the DOB was made without the consent of the Board of Managers; defendant executed it as the "owner."

Plaintiff Board commenced this action and moved by order to show cause for a preliminary injunction prohibiting defendant from engaging in further construction, arguing that only the Board was authorized to sign such applications for building permits since the work required Board approval, as the added floor might improperly appropriate zoning floor area. The Board also argued that the consent of all the unit owners was required because Real Property Law § 339-k prohibited the addition of a "material structure" and because the proposed concrete slab would, once constructed, become a Common Element of the building.

Defendant cross-moved for declaratory and injunctive relief, including an order directing the Board to provide all authorizations necessary to obtain permits, including those for electric, gas, plumbing, sewer and water in the Unit or through the Common Elements for service connections. Defendant argued that the work was governed by By-laws § 5.2 (B), which allows the Commercial Unit owner to make alterations and improvements, "whether structural or non-structural, interior or exterior, ordinary or extraordinary." Defendant further contended that the work would not affect the building's structure, that the addition of the floor was not an addition of a material structure, that anything physically incorporated was within the Unit and not a Common Element, that defendant had an easement for exclusive use of the area incorporated within the Commercial Unit, and that no residential owners would be affected by addition of the floor.

By order entered June 15, 1999, the motion court denied plaintiff's application and granted defendant's cross-motion to the extent of (1) directing the Board to provide defendant and any relevant agency with all authorizations, statements, acknowledgments or other documents necessary for defendant and the restaurant "to apply for and obtain any and all permits to perform work shown on its plans," including electric, gas, plumbing, sewer and water, and (2) declaring that defendant and the restaurant tenant were entitled to use the electric, gas, water and sewer access for the purpose of connecting its utilities to those otherwise provided by the building for which defendant had an easement over the Common Elements. The

court further directed that, if the Board refused to sign the necessary documents, defendant would have the right to sign them on the Board's behalf.

The Board then had its architects and engineers review the plans, and concluded that the additional space caused by the addition of a floor within the Commercial Unit would increase the building's floor area ratio and cause the building to become overbuilt, in violation of local zoning laws. The DOB apparently agreed with this contention.

Defendant then adjusted his plans to avoid the floor area ratio problem. The new plan provided for the cellar floor to be lowered, and the ceiling dropped, so that the cellar and mezzanine floors would be located more than fifty percent below grade. To do this, defendant would remove the entire cellar mezzanine, transform the cellar floor into the new mezzanine restaurant dining area, and create a new subcellar by excavating under the existing subcellar. As the relocated floor would then not be counted as a floor, it would not affect the building's floor area ratio, and the cellar and mezzanine would comply with the zoning laws.

In order to prepare detailed plans to submit to DOB in connection with the application for an excavation permit, to demonstrate that any excavation would not affect the building's structural integrity, defendant's engineers commenced probing beneath the cellar floor. The Board filed complaints with DOB and the Police Department that excavation was being performed without a permit. A Stop Work Order was issued. The plans were then completed but, when defendant asked the Board to sign the necessary applications to proceed with the floor excavation, the Board refused to do so. Defendant then signed the applications pursuant to the authority he claimed was granted by Justice Solomon's order. The application and plans were submitted to the DOB, which subsequently issued an excavation permit, and the excavation began.

The Board then sought to enjoin the excavation. Defendant cross-moved for an order giving him the right to sign the excavation application and to prevent the Board from challenging the issuance of the permit on the ground that the Board had not authorized the work.

By order entered April 12, 2000, Supreme Court denied the Board's motion and granted defendant's cross-motion, holding that the June 15, 1999 order gave defendant the right to execute the excavation application. The court also held that the Real Property Law did not preclude defendant from adding the new subcellar to the Commercial Unit.

Both orders are now challenged on appeal by plaintiff Board of Managers.

Discussion

While the first order under appeal properly recognized that the Board of Managers had no right to prevent the initially proposed work, since it was completely within defendant's Commercial Unit, defendant's proposed excavation and enlargement of the Commercial Unit does not fall within the same category.

Defendant relies upon article 12 of the Condominium's Declaration, which states that the Commercial Unit owner shall have the right, to the extent not prohibited by law, without consent or approval of the Board, "(C) to change the size of Commercial Units by * * * (y) altering the boundary of the Commercial Unit (including, without limitation, incorporating in such Commercial Unit a space or other area forming a part of the Common Elements which services or benefits only such Commercial Unit and does not affect access to any other Unit)." However, even assuming this provision may be properly understood to permit the owner of the Commercial Unit to create a whole new addition by incorporating within the Unit a portion of the condominium's Common Elements only used by that Unit, there remains the problem of whether the expansion is prohibited by law.

The record before this Court leaves open the question of whether there is a violation of Real Property Law § 339-k. That statute prohibits a unit owner from excavating any additional basement or cellar without in every such case the consent of all the *affected* unit owners.

The majority holds that the term "unit owners affected," whose consent must be obtained under Real Property Law § 339-k, applies only to those owners whose units are "appurtenant to" the area being excavated. It goes on to explain that if the Legislature meant to give *all* unit holders such veto power, it would have specifically required "the unanimous consent of the unit owners," as it did in Real Properly Law § 339-*l*.

I do not suggest that section 339-k *necessarily* requires the consent of all unit owners before excavation may proceed. The question of which other units will be "affected" by excavation will depend upon many variables, including the design and structure of the building and the extent of the planned excavation. For instance, to use an extreme example, plans for a minor excavation at one corner of a building that covers an entire city block would be unlikely to affect the owners of units at the opposite side of the building. I merely suggest that in this

instance, plaintiff offered sufficient evidence that other unit owners may be affected by the planned excavation, so as to require a factual inquiry into whether section 339-k is applicable.

Plaintiff Board of Managers has submitted an affidavit by its consulting architect, who explains how excavation may cause damage to the structure. He points out that the Commercial Unit and the residential units share a common wall, and that the excavation area is adjacent to the part of the cellar where the boilers for the residential units are located. If the excavation is not done properly, he states, it could negatively affect the structural stability of the condominium in a number of possible ways, such as by weakening supports or interfering with utility lines. Furthermore, the vibrations caused by defendant's use of jackhammers could also lead to problems with utility lines or cause a loosening of masonry or mechanical anchors.

These assertions should not be summarily rejected; at the very least, there should have been a hearing to address the issue of whether the planned excavation would affect the other unit owners.

Nor do I agree that the Legislature's use of the term "unit owners affected" was intended to be synonymous with "appurtenant unit owners." The term "appurtenant" is an ancient legal term of art: "[a] thing 'appurtenant' is defined to be a thing used with and related to or dependent upon another thing *more worthy*" (*Woodhull v Rosenthal*, 61 NY 382, 390 [1875]). In contrast, the word "affected" is substantially broader, having a common and everyday meaning which relates to producing an alteration or an influence upon something (*see*, Merriam Webster's Collegiate Dictionary 19 [5th ed]). The Legislature was well aware of the two distinct meanings, and has never used the two interchangeably.

Indeed, it is understandable that the Legislature would employ a broad term such as "affected" rather than "abutting" or "appurtenant" in the context of section 339-k. Excavation under a building is a relatively extreme, invasive process, fundamentally different from the process of making alterations entirely within a unit. It is entirely reasonable to expand the class of people who are entitled to be notified of and to object to such plans.

Accordingly, the mere fact that the cellar is not directly below any other unit, does not by itself justify the legal conclusion that the excavation and construction of a completely new subcellar will not "affect" any condominium unit other than defendant's Commercial Unit.

To the extent the motion court concluded that the prior order required that defendant be given the authority it sought, it was in error. This situation is completely distinguishable from a unit owner making alterations or additions "in or to" a unit, as is permitted by section 5.2 of the Condominium By-laws. Nor does an order permitting work "in and around" a unit translate to a permit for construction of a new full subcellar underneath a unit. Additionally, the exclusive easement provided to the Commercial Unit by the Declaration in no way gives the owner of the Commercial Unit the equivalent of a fee interest by which he would have the absolute, unfettered right to excavate and annex the land below the condominium in order to enlarge the Unit by construction of a completely new subcellar below the portion of the property owned.

For the foregoing reasons, I would reverse the order entered April 12, 2000, and remand for a hearing on the question of whether the planned excavation will affect the condominium's other unit owners.